UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 7 |
| Rodney Wayne Weidenbenner and | : | Case No. 14-35443 (CGM) |
| Michele Ann Weidenbenner, | : | (Bankr. S.D.N.Y.) |
| | : | |
| Debtors. | : | |

------------------------------------------------------x

| | | |
|---|---|---|
| Wells Fargo Bank, N.A., | : | |
| | : | |
| Appellant, | : | Case No. 15-cv-00244 (KMK) |
| v. | : | |
| | : | |
| Rodney Wayne Weidenbenner and | : | |
| Michele Ann Weidenbenner, | : | |
| | : | |
| Appellees. | : | |

------------------------------------------------------x

Appeal from Orders of the United States Bankruptcy Court
for the Southern District of New York (Morris, C.J.)

## BRIEF OF APPELLANT WELLS FARGO BANK, N.A.

Christopher R. Mirick, Esq.
Samuel S. Cavior, Esq.

PILLSBURY WINTHROP SHAW PITTMAN LLP
1540 Broadway
New York, NY 10036
(212) 858-1000
christopher.mirick@pillsburylaw.com
samuel.cavior@pillsburylaw.com

*Counsel for Appellant, Wells Fargo Bank, N.A.*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rules 8012 and 8014 of the Federal Rules of Bankruptcy Procedure and Rule 26.1 of the Federal Rules of Appellate Procedure, appellant Wells Fargo Bank, N.A. states that: (1) WFC Holdings Corporation, a wholly-owned subsidiary of Wells Fargo & Company, has an ownership interest of 10 percent or more in Wells Fargo Bank, N.A., and (2) Wells Fargo & Company, a publicly held corporation, also has an ownership interest of 10 percent or more in Wells Fargo Bank, N.A.

## <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT ........................................ i

INTRODUCTION ................................................................. 1

STATEMENT OF JURISDICTION ............................................. 2

ISSUES PRESENTED FOR REVIEW ........................................ 3

STATEMENT OF THE CASE .................................................. 4

    A.   Course of Proceedings Below ..................................... 4

    B.   Disposition of the Bankruptcy Court ........................... 5

STATEMENT OF FACTS ....................................................... 6

    A.   Wells Fargo's Policy Toward Individual Chapter 7
       Debtors ................................................................. 6

    B.   This Case ............................................................... 7

SUMMARY OF ARGUMENT .................................................. 9

ARGUMENT ....................................................................... 11

I.    AS A MATTER OF LAW, THE DEBTORS CANNOT
    ESTABLISH THAT THEY WERE INJURED BY A
    VIOLATION OF THE AUTOMATIC STAY ........................... 11

    A.   Wells Fargo's Conduct Did Not Violate Section
       362(a)(3) ............................................................... 11

        1.  Wells Fargo's Conduct Was Mandated by Section
          542(b) ............................................................ 12

        2.  Wells Fargo Did Not Exercise Control Over Property
          of the Estate ................................................... 19

        3.  The Bankruptcy Court's Interpretation of "Exercise
          Control" Is Too Broad ....................................... 24

        4.  The Bankruptcy Court's Criticism of Wells Fargo's
          National Policy Is Irrelevant .............................. 28

    B.    Wells Fargo's Conduct Could Not Have Caused the
          Debtors' Alleged Injury ...................................................30

II.   THE BANKRUPTCY COURT'S PUBLIC POLICY
      ARGUMENT IS BOTH IRRELEVANT AND WRONG ...........................33

III.  THE REMAINING PROVISIONS CITED BY THE
      DEBTORS ARE INAPPLICABLE ...............................................38

CONCLUSION .........................................................................39

CERTIFICATE OF COMPLIANCE...................................................... A-1

BANKR. RULE 8014(d) ADDENDUM ...............................................B-1

## TABLE OF AUTHORITIES

### Cases

*Adar 980 Realty, LLC v. Sofer*,
    2014 U.S. Dist. LEXIS 108951 (E.D.N.Y. Aug. 5, 2014) ............................3, 30

*Amplifier Research Corp. v. Hart*,
    144 B.R. 693 (E.D. Pa. 1992) ...................................................................... 26, 27

*Bank of Am., N.A. v. Adomah (In re Adomah)*,
    368 B.R. 134 (S.D.N.Y. 2007) .......................................................................3, 11

*Bell v. Bell (In re Bell)*,
    225 F.3d 203 (2d Cir. 2000) ...............................................................................14

*Bucchino v. Wells Fargo (In re Bucchino)*,
    439 B.R. 761 (Bankr. N.M. 2010) ............................................................... 17, 23

*Citizens Bank of Maryland v. Strumpf*,
    516 U.S. 16 (1995) ................................................................................... *passim*

*Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*,
    253 B.R. 336 (S.D.N.Y. 2000),
    *aff'd*, 262 F.3d 96 (2d Cir. 2001) ......................................................................30

*EM Ltd. v. Republic of Arg.*,
    865 F. Supp. 2d 415 (S.D.N.Y. 2012) ................................................................13

*Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*,
    530 U.S. 1 (2000) ................................................................................................15

*In re Calvin*,
    329 B.R. 589 (Bankr. S.D. Tex. 2005) .................................................. 12, 17, 23

*In re Crawford*,
    476 B.R. 83 (S.D.N.Y. 2012) .............................................................................11

*In re de Kleinman*,
    172 B.R. 764 (Bankr. S.D.N.Y. 1994) ................................................................15

*In re Holden*,
    236 B.R. 156 (Bankr. D. Vt. 1999) ....................................................................23

## Cases (*cont'd*)

*In re Jernigan*,
   475 B.R. 535 (Bankr. W.D. Va. 2012) ............................................................16

*In re Kessler*,
   2011 WL 1042617 (Bankr. S.D. Cal. 2011) ....................................................32

*In re Lee*,
   2011 Bankr. LEXIS 5561 (Bankr. D. Alaska Mar. 15, 2011) ...........................17

*In re Megan-Racine Assocs., Inc.*,
   203 B.R. 873 (Bankr. N.D.N.Y. 1996) ............................................................23

*In re Phillips*,
   443 B.R. 63 (Bankr. M.D.N.C. 2010) ................................................. 15, 17, 23

*In re Randolph Towers Coop., Inc.*,
   458 B.R. 1 (Bankr. D.D.C. 2011) ........................................................ 12, 23

*In re Smith*,
   2001 Bankr. LEXIS 1897 (Bankr. S.D.N.Y. Aug. 10, 2001) ...........................15

*In re Young*,
   439 B.R. 217 (Bankr. M.D. Fla. 2010) ................................................. 17, 23

*Keller v. Frederickstown Sav. Inst.*,
   66 A.2d 924 (Md. 1949) ............................................................................13

*Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi)*,
   764 F.3d 1168 (9th Cir. 2014) ......................................................... *passim*

*Mwangi v. Wells Fargo Bank, N.A.*,
   2014 U.S. Dist. LEXIS 5774 (D. Nev. Jan. 15, 2014) .....................................18

*Mwangi v. Wells Fargo Bank, N.A.*,
   Adv. Pro. No. 11-01022 (Bankr. D. Nev. Sept. 27, 2011),
   *aff'd*, 473 B.R. 802 (D. Nev. 2012) ...............................................................18

*Mwicharo v. Wells Fargo Bank, N.A. (In re Mwangi)*,
   585 Fed. App. 939 (9th Cir. Nev. 2014) .........................................................18

*Nelson v. Providian Nat'l Bank (In re Nelson)*,
   234 B.R. 528 (Bankr. M.D. Fla. 1999) ............................................................16

## Cases (*cont'd*)

*Norwest Bank Worthington v. Ahlers,*
    485 U.S. 197 (1988)..............................................................39

*Smart World Techs., LLC v. Juno Online Servs. (In re Smart World*
    *Techs., LLC),*
    423 F.3d 166 (2d Cir. 2005) ..............................................39

*Tex. & Pac. Ry. Co. v. Abilene Cotton Oil Co.,*
    204 U.S. 426 (1907)..............................................................16

*Thompson v. GMAC, LLC,*
    566 F.3d 699 (7th Cir. 2009) ..............................................27

*United States v. Inslaw, Inc.,*
    932 F.2d 1467 (D.C. Cir. 1991)...........................................16

*Wells Fargo Bank, N.A. v. Jimenez,*
    406 B.R. 935 (D.N.M. 2008) ......................................... 16, 22-23, 32

*Zavala v. Wells Fargo Bank (In re Zavala),*
    444 B.R. 181 (Bankr. E.D. Cal. 2011)......................................... 16-17

# Statutes and Regulations

## United States Code, 11 U.S.C.

Section 105(a) ........................................................................................38-39

Section 362(a) .........................................................................................*passim*

Section 362(a)(1) ........................................................................................38

Section 362(a)(3) .....................................................................................*passim*

Section 362(a)(6) ........................................................................................20

Section 362(k) .........................................................................................*passim*

Section 362(k)(1) .........................................................................................11

Section 521(a)(4) ........................................................................................25

Section 522............................................................................................4

Section 525.............................................................................................38

Section 541 ............................................................................................*passim*

Section 541(a)(1) ........................................................................................14

Section 541(a)(6) ..........................................................................................8

Section 542 ............................................................................................*passim*

Section 542(a) ............................................................................................12

Section 542(b) ........................................................................................*passim*

Section 542(c) .......................................................................6, 12, 15, 25

Section 701 .........................................................................................12, 23

Section 1104...............................................................................................23

Section 1105...............................................................................................23

Section 1107...............................................................................................23

Section 1302...............................................................................................23

## United States Code, 28 U.S.C.

Section 1334...............................................................................................2

Section 157(a).............................................................................................2

Section 158(a)(1) ........................................................................................2

## Federal Rules of Bankruptcy Procedure

Rule 4003(b) ..............................................................................................14

## INTRODUCTION

Wells Fargo Bank, N.A. ("Wells Fargo") honored a statutory obligation to recognize that once Rodney and Michele Weidenbenner (the "Debtors") filed a bankruptcy case, only the duly appointed chapter 7 trustee (the "Trustee") could control the prepetition balances in the Debtors' deposit accounts at the bank. Wells Fargo did so by permitting only the Trustee to direct payment of those prepetition balances, which were property of the bankruptcy estate under the Trustee's exclusive control, and necessarily rejected instructions from the Debtors regarding those estate assets. However, when the Trustee directed Wells Fargo to pay the balances to (or on the order of) the Debtors, Wells Fargo complied on the same day.

The Debtors filed a motion seeking sanctions against Wells Fargo (the "Motion") for allegedly violating the automatic stay under the Bankruptcy Code [1] by refusing to honor their payment instructions while the Trustee was in control. Although the United States Bankruptcy Court for the Southern District of New York (Morris, C.J.) (the "Bankruptcy Court") acknowledged that the Debtors were wrong to seek to direct the payment of the estate's account balances, the Bankruptcy Court nevertheless decided that Wells Fargo's compliance with its

---

[1]   Unless otherwise indicated, all references herein to statutory "chapters" and "sections" relate to title 11 of the United States Code (the "Bankruptcy Code").

statutory obligation to honor the Trustee's control of the estate's account balances violated the automatic stay.

The Bankruptcy Court's ruling is contrary to the ultimate resolution of every case that has addressed Wells Fargo's recognition of a chapter 7 trustee's rights.  In this case, as in every prior case, Wells Fargo's recognition that the Trustee controlled the bank's accounts payable on the Debtors' prepetition deposits was not an exercise of control over property of the bankruptcy estate in violation of the automatic stay. Rather, Wells Fargo's conduct complied with the Bankruptcy Code, protected estate property, and avoided the risk of Wells Fargo having to pay the account balances twice—once to the Debtors, and then again to the Trustee for having improperly paid estate property to the Debtors.

Wells Fargo appeals to correct the result below so that it conforms to the uniform results in every other case addressing the issues presented.

## STATEMENT OF JURISDICTION

The Bankruptcy Court had subject-matter jurisdiction over the Motion pursuant to 28 U.S.C. § 1334 and § 157(a).  This Court has jurisdiction pursuant to 28 U.S.C. §158(a)(1).  This appeal is timely. The Bankruptcy Court's orders on the Motion were entered on December 30, 2014 and December 31, 2014.  WF 293-

97.[2]   A notice of appeal was filed on January 12, 2015. WF 298-308.   The Bankruptcy Court stayed the orders pending appeal, on February 23, 2015. Request for Judicial Notice, dated April 2, 2015, Ex. A ("Req. for Notice"), item 4.

## ISSUES PRESENTED FOR REVIEW

Whether the Debtors' claim for sanctions for an alleged violation of the automatic stay fails, as a matter of law, where: (1) Wells Fargo did not exercise control over the Estate Balances[3] but merely recognized the Trustee's statutory control over them as property of the bankruptcy estate; and (2) Wells Fargo's conduct could not have caused the injury alleged by the Debtors when they had no rights to control property of the estate.

These are issues of law subject to *de novo* review. *See Bank of Am., N.A. v. Adomah (In re Adomah)*, 368 B.R. 134, 137 (S.D.N.Y. 2007) (whether the automatic stay of section 362 has been violated is a question of law reviewed *de novo*); *Adar 980 Realty, LLC v. Sofer*, 2014 U.S. Dist. LEXIS 108951, at *8 (E.D.N.Y. Aug. 5, 2014) (*de novo* review of standing for motion under sections 362(a) and (k)).

---

[2]   All references to "WF ___" are to pages of the Appendix filed herewith.

[3]   Deposit account balances that existed on the date of the bankruptcy petition and remained owed by Wells Fargo (as accounts payable) on the date that it learned of the bankruptcy case are referred to as the "Estate Balances" (or sometimes, in the record, as the "Account Obligations").

## STATEMENT OF THE CASE

This appeal arises from the Debtors' Motion alleging that Wells Fargo violated the automatic stay of 11 U.S.C. § 362(a) by placing an "administrative pledge" on the Estate Balances, which gave the Trustee (and denied the Debtors) access to funds the Debtors believed were theirs to use. WF 003-04.

### A.    Course of Proceedings Below

In their Motion, the Debtors argued that Wells Fargo applied the administrative pledge to "seize" "their" funds, which they had claimed as exempt assets under section 522. The Debtors sought compensatory damages for a $25.00 penalty charged by Kohl's and emotional distress, along with attorney's fees, costs and punitive damages. WF 013.

Wells Fargo timely filed an objection to the Motion. WF 054-93. The Trustee did not claim any misconduct or stay violation by Wells Fargo, and took no part in the Motion.

On July 22, 2014, the Bankruptcy Court commenced a hearing on the Motion but then scheduled an evidentiary hearing for October 6, 2014 and directed the parties to submit a joint statement of facts and issues, which the parties did on September 29, 2014. WF 106:8-109:13.  After hearing testimony from Wells Fargo's witness, the Bankruptcy Court declined to hear oral arguments and took the matter under submission. *See* WF 290:19-291:3.

**B.     Disposition of the Bankruptcy Court**

On December 12, 2014, the Bankruptcy Court issued a *Memorandum Decision Finding Stay Violation and Awarding Damages*, finding that Wells Fargo violated the automatic stay under section 362(a)(3) by exercising control over property of the estate, and that the Debtors had standing to prosecute an action for damages under section 362(k). WF 208. The Bankruptcy Court indicated that it would award $25.00 in actual damages, plus costs and attorney's fees. *Id.*

On December 30, 2014 and December 31, 2014, the Bankruptcy Court entered two orders, together finding that for the reasons set forth in the memorandum decision, (i) Wells Fargo had violated the automatic stay by placing an administrative freeze on property of the estate, and (ii) the Debtors had standing to assert a claim for damages.  The Bankruptcy Court awarded the Debtors $25.00 in actual damages, $13.68 in costs, and $14,839.50 in attorney's fees. WF 293-94.

Wells Fargo filed its notice of appeal, along with a motion for stay pending appeal, on January 12, 2015. Req. for Notice, item 1.  After a February 10, 2015 hearing on Wells Fargo's motion, the Bankruptcy Court granted the requested stay pending appeal, and entered an order doing so on February 23, 2015. *Id.*, items 4-5. At that hearing, the Bankruptcy Court "acknowledge[d] that many Courts, including the Ninth Circuit, have held in favor of Wells Fargo" but "[t]he Court simply disagrees with the reasoning in those decisions." *Id.*, item 5, at 8:12-16.

## STATEMENT OF FACTS

**A.**     **Wells Fargo's Policy Toward Individual Chapter 7 Debtors**

Wells Fargo is a national bank that has millions of individual customers nationwide. Because thousands of those individuals seek relief under chapter 7 of the Bankruptcy Code each year, Wells Fargo has policies for handling many aspects of these customer bankruptcies. The bank's policies address the interests of Wells Fargo and its customers who become chapter 7 debtors. Thus, for example, Wells Fargo does not charge fees for overdrafts by individual customers while they are chapter 7 debtors. WF 241:21-24.

Under another policy (the "administrative pledge policy" pursuant to which Wells Fargo took the actions that are at issue in this case), as long as the balances on deposit (and thus, the amount of Wells Fargo's potential liability for mishandling them) are relatively small (*viz.*, less than $5,000 in the aggregate), Wells Fargo does not limit the ability of individual chapter 7 debtors to access prepetition account balances prior to getting instructions from their chapter 7 trustee. This is true even though, as discussed below, (i) section 541 divests debtors of rights to those balances, (ii) section 542(b) requires Wells Fargo to pay those balances to, or on the order of, the chapter 7 trustee, and (iii) section 542(c) subjects Wells Fargo to liability for account balances paid other than to, or as instructed by, the chapter 7 trustee (where Wells Fargo had knowledge of the

bankruptcy case). 231:25-232:21; WF 239:14-24. In other words, for individuals with smaller accounts (who may be the most needful), Wells Fargo voluntarily takes the risk that it may be required to repay the bankruptcy estate for amounts improperly paid to, or on the order of, those individual debtors. Otherwise, Wells Fargo complies with its obligations under the Bankruptcy Code by looking solely to the chapter 7 trustee to control payment of account balances that are property of the bankruptcy estate. WF 271:8-272:3; WF 277:4-278:14.

**B.     This Case**

The Debtors filed their joint chapter 7 bankruptcy case on March 7, 2014. WF 111.

When Wells Fargo learned of the case on March 12, 2014, there was more than $5,000 in the aggregate of prepetition funds still on deposit, so it placed the Debtors' four deposit accounts on "bankruptcy status." WF 113. This procedure recognizes that account balances on the date of the bankruptcy petition became property of the estate under the exclusive control of the Trustee, and results in an "administrative pledge" to the accounts that permits the payment of these Estate Balances only upon the Trustee's direction. WF 112-14; WF 082-86. Necessarily, this prevented the Estate Balances from being paid as directed by the Debtors. The administrative pledge did *not* restrict the Trustee's access to the Estate Balances,

nor did it limit the Debtors' access to post-petition deposits (which did not become property of the bankruptcy estate). WF 112-14; WF 082-86.

Also on March 12th, Wells Fargo wrote to the Debtors' counsel (with copies to the Debtors) and to the Trustee, advising them of its action. WF 113. The letter to the Trustee acknowledged that the Estate Balances were payable to the Trustee or upon the Trustee's order, and requested her instructions regarding their disposition. WF 113.

Five days later, on March 17, 2014, using a form provided by Wells Fargo, the Trustee instructed Wells Fargo (via fax) to release the entire amount of the Estate Balances to the Debtors. Wells Fargo complied the same day. WF 113-14.

In the interim, while the Debtors were unable to use the Estate Balances, Wells Fargo honored various check and debit card transactions, as well as inter-account balance transfers, to the extent these could be satisfied from the Debtors' post-petition deposits, which, as noted above, were unaffected by the administrative pledge. WF 114-15. [4]

When the Debtors' $75.00 ACH payment to Kohl's was presented to Wells Fargo on March 13, 2014, however, the checking account on which it was drawn had a post-petition, non-estate balance of only $19.70. WF 121. Wells Fargo, thus,

---

[4]   A debtor's post-petition income does not become property of the bankruptcy estate in a chapter 7 case. 11 U.S.C. § 541(a)(6) (excluding "earnings from services performed by an individual debtor after the commencement of the case").

had no choice but to dishonor this attempted transaction.  At that time, the Debtors had a total of $480.74 in non-estate funds available in their other accounts. *See* WF 115-22; WF 133-62.

## SUMMARY OF ARGUMENT

The Bankruptcy Court erroneously (i) decided that Wells Fargo violated the automatic stay of section 362(a)(3) when the bank complied with its statutory obligation to recognize the Trustee's exclusive control over the Estate Balances, and (ii) imposed sanctions against Wells Fargo under section 362(k) for the recovery of damages allegedly caused by that violation.

Here, there was no violation of section 362(a)(3), and therefore no liability for damages under section 362(k). When Wells Fargo learned that the Debtors had filed a chapter 7 bankruptcy case, it promptly acknowledged that the Trustee, not the Debtors, controlled the Estate Balances and, to keep from paying on anyone else's instructions, applied an administrative pledge in favor of the Trustee. Wells Fargo did not exercise control over property of the bankruptcy estate, but complied with section 542(b), which requires the bank to pay the prepetition account balances exclusively "to, or on the order of" the Trustee. All other cases that have reached this issue have ultimately recognized that it cannot be a violation of the automatic stay for Wells Fargo to do what section 542(b) compels.

Moreover, Wells Fargo's conduct could not have caused the injury alleged by the Debtors—a $25.00 penalty charged by Kohl's. The insufficiency of available funds in the checking account (which led to the penalty) was not caused by any violation of the automatic stay by Wells Fargo. Once the Debtors filed their chapter 7 case, the prepetition funds in their accounts became property of their bankruptcy estate pursuant to section 541. Absent direction from the Trustee (or a court order), Wells Fargo could not lawfully comply with the Debtors' directions regarding those balances. As a matter of law, the Debtors cannot claim that they were injured by any inability to use account balances that they had no right to use at the time. Acknowledging that courts in other cases have held in favor of Wells Fargo on this issue, the Bankruptcy Court nonetheless disagreed with them. WF 205; Req. for Notice, item 5, at 8:12-16. In fact, however, every other case that has addressed this question has ultimately ruled for Wells Fargo. Those decisions are correct, and it is the Bankruptcy Court that is wrong.

As a matter of law, the Debtors cannot establish that they were injured in this case by a violation of the automatic stay by Wells Fargo. The Bankruptcy Court's orders granting the Debtors' Motion should be reversed.

<u>**ARGUMENT**</u>

## I.   AS A MATTER OF LAW, THE DEBTORS CANNOT ESTABLISH THAT THEY WERE INJURED BY A VIOLATION OF THE AUTOMATIC STAY

The Debtors sought, and the Bankruptcy Court granted, sanctions against Wells Fargo under section 362(k), which provides for the recovery of damages by an individual "injured by any willful violation" of the automatic stay under section 362(a). 11 U.S.C. § 362(k)(1). Thus, by its terms, section 362(k) requires an injury caused by a violation of the automatic stay.

Here, the Debtors allege they suffered injury in a $25.00 penalty charged by Kohl's. *See* WF 006. Their claim for sanctions fails as a matter of law for two reasons: (1) Wells Fargo's conduct did not violate the automatic stay; and (2) in any event, Wells Fargo's conduct could not have caused the alleged injury.

### A.   Wells Fargo's Conduct Did Not Violate Section 362(a)(3)

The Bankruptcy Court should be reversed because Wells Fargo did not violate the automatic stay.[5]

---

[5]   On appeal, a bankruptcy court's conclusions of law are reviewed *de novo* and its findings of fact are reviewed for clear error. *Nat'l Union Fire Ins. Co. v. Bonnanzio (In re Bonnanzio)*, 91 F.3d 296, 300 (2d Cir. 1996); *In re Crawford*, 476 B.R. 83, 86 (S.D.N.Y. 2012). Whether the automatic stay provisions of section 362 have been violated is a question of law reviewed *de novo*. *In re Adomah*, 368 B.R. at 137.

### 1.  *Wells Fargo's Conduct Was Mandated by Section 542(b)*

Wells Fargo's conduct did not violate the automatic stay because it was mandated by section 542(b) of the Bankruptcy Code.

When an individual commences a chapter 7 case, an estate is immediately created consisting of all legal and equitable interests of the debtor in property, wherever located and by whomever held. 11 U.S.C. § 541. A trustee is appointed to take charge of the bankruptcy estate. *Id.*, §§ 701, 702. Any third party in possession of estate property is directed to turn it over to the trustee. *Id.*, § 542. More specifically, any party that owes a debt to the estate that is "matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee." *Id.*, § 542(b). Further, if that party is aware of the bankruptcy case but pays its debt other than to or on the order of the trustee, it can be liable to the estate for any resulting loss. *See id.*, § 542(c).

Section 542(b) controlled the account balances at issue in this case. *See, e.g.*, *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995) (applying section 542(b) to deposit account balances); *In re Randolph Towers Coop., Inc.*, 458 B.R. 1, 5 (Bankr. D.D.C. 2011) ("Section 542(b) applies because the debtor's bank accounts were payable on demand, and thus governs 'turnover' of the bank account."); *In re Calvin*, 329 B.R. 589, 596 (Bankr. S.D. Tex. 2005) (when a debt is at issue, section 542(b), being the more specific statute, applies over section 542(a)).

It has long been recognized that a bank account is simply a debt obligation of the bank, rather than the common misconception of a pile of cash sitting in a vault. *See Strumpf*, 516 U.S. at 21 (bank account is "nothing more or less than a promise to pay, from the bank to the depositor") (citing *Keller v. Frederickstown Sav. Inst.*, 66 A.2d 924, 925 (Md. 1949)); *see also EM Ltd. v. Republic of Arg.*, 865 F. Supp. 2d 415, 423 (S.D.N.Y. 2012) (bank account consists of promise to pay, rather than money belonging to the depositor) (quoting *Strumpf*).

The Bankruptcy Court erroneously concluded that Wells Fargo inappropriately controlled estate property. *See, e.g.,* WF 200 ("[Wells Fargo] placed a hold on a *tangible amount of money* in Debtors' bank accounts.") (emphasis added). In fact, Wells Fargo did not (and could not) possess or control tangible money, because that is not the nature of a deposit account. If it were, every party that owed a promissory note or account payable to a debtor would be, under the Bankruptcy Court's analysis, in control of estate property and in violation of the automatic stay immediately upon commencement of a bankruptcy case. Section 542(b) addresses the obligation of those parties, which is to pay the amounts they owe to the trustee or look to the trustee for instructions on payment. If an obligor withheld property from the trustee for its own benefit, that could be a violation of the stay—but Wells Fargo did nothing of the kind. It expressly recognized that the Estate Balances were owed to the Trustee as part of the

bankruptcy estate, and that the Debtors had no right to them. The cases cited by the Bankruptcy Court, discussed below, involved third parties that either withheld assets from the estate or sought to prevent the estate from using its assets. Those cases have no application here.

It is undisputed that under section 541 of the Bankruptcy Code, Wells Fargo's debt with respect to the Debtors' account balances (to the extent traceable to prepetition deposits) became property of the estate upon commencement of the Debtors' bankruptcy case—the Debtors alleged this in their Motion, the Bankruptcy Court found it, and Wells Fargo agrees. *See* WF 012; WF 125; WF 199. *See also,* 11 U.S.C. § 541(a)(1) (bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."). That the Debtors claimed an exemption in their petition-date account balances does not change this conclusion. Property claimed as exempt is not automatically exempted, and a debtor's mere claim of exemption does not give him an immediate right to control the claimed property; instead, the claimed exempt property remains under the control of his trustee. *See, e.g., Bell v. Bell (In re Bell)*, 225 F.3d 203, 215 (2d Cir. 2000) (recognizing "well-settled law" that property claimed as exempt becomes exempt, and revests in the debtor, only if no objections are made within the objection period prescribed by Bankruptcy Rule 4003(b), which is 30 days from the conclusion of the meeting of creditors under section

341); *In re Smith*, 2001 Bankr. LEXIS 1897, at *15 (Bankr. S.D.N.Y. Aug. 10, 2001); *In re de Kleinman*, 172 B.R. 764, 768 (Bankr. S.D.N.Y. 1994).

Thus, section 542(b) mandates Wells Fargo to pay the Estate Balances "to, or on the order of," the Trustee. *See* 11 U.S.C. § 542(b).[6] And, Wells Fargo could not pay the Estate Balances to (or on the order of) the Debtors, unless directed to do so by the Trustee. *In re Phillips*, 443 B.R. 63, 66 (Bankr. M.D.N.C. 2010) ("[I]f Wells Fargo did release the funds directly to the Debtors, it could have been liable under § 542 for any decrease in estate funds."); *see* 11 U.S.C. § 542(c) (a person owing a debt to a debtor can avoid liability for paying someone other than the trustee only if the obligor did not have notice or knowledge of the bankruptcy case).

In this case, when Wells Fargo learned of the Debtors' bankruptcy filing, it promptly (i) acknowledged that the Trustee controlled the Estate Balances, (ii) asked the Trustee for her orders regarding disposition of the Estate Balances, and (iii) through its administrative pledge, ensured that the orders of no one other than the Trustee regarding the Estate Balances would be honored. By seeking the Trustee's orders (and, thus, necessarily refusing to honor the Debtors' orders), Wells Fargo did exactly what section 542(b) requires. Wells Fargo acknowledged that the Trustee controlled the Estate Balances.

---

[6]  Where a statute specifies the trustee as the party to whom a right is conferred, the right should not be extended to other parties. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 8-9 (2000) (interpreting section 506(c)).

It cannot be a violation of the automatic stay under section 362(a) for Wells Fargo to do what section 542(b) mandates. *See Strumpf*, 516 U.S. at 20 ("It is an elementary rule of construction that 'the act cannot be held to destroy itself.'") (quoting *Tex. & Pac. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426, 446 (1907)); *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1474 (D.C. Cir. 1991) ("For obvious reasons…courts have recognized that § 362(a) cannot stay actions specifically authorized elsewhere in the bankruptcy code."); *Nelson v. Providian Nat'l Bank (In re Nelson)*, 234 B.R. 528, 534 (Bankr. M.D. Fla. 1999) ("The contention that the exercise of a *mandated statutory right* under the Bankruptcy Code is a violation of the automatic stay is…absurd") (emphasis added, to contrast with the mandated statutory *obligation* here).

Indeed, in all cases up to now that have reached this issue, courts have ultimately decided that Wells Fargo's application of an administrative pledge in favor of the chapter 7 trustee does not violate the automatic stay. *See, e.g.*, *Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi)*, 764 F.3d 1168, 1178 (9th Cir. 2014) ("*Mwangi (Cir.)*") ("Wells Fargo did not withhold estate property from the estate."); *Wells Fargo Bank, N.A. v. Jimenez*, 406 B.R. 935, 949 (D.N.M. 2008) ("the Court concludes that a violation of the automatic stay did not occur"); *In re Jernigan*, 475 B.R. 535, 540 (Bankr. W.D. Va. 2012) ("the Bank's actions did not violate the automatic stay"); *Zavala v. Wells Fargo Bank (In re Zavala)*, 444 B.R.

181, 185 (Bankr. E.D. Cal. 2011) ("no violation of the automatic stay occurred as to the Debtors"); *In re Lee*, 2011 Bankr. LEXIS 5561, at *4 (Bankr. D. Alaska Mar. 15, 2011) ("Wells Fargo has not violated the stay"); *Bucchino v. Wells Fargo (In re Bucchino)*, 439 B.R. 761, 776 (Bankr. N.M. 2010) ("Wells Fargo's actions under the circumstances of this case do not violate 11 U.S.C. § 362(a)(3)"); *In re Phillips*, 443 B.R. at 66 ("Wells Fargo's actions did not constitute an exercise of control in violation of § 362(a)(3)"); *In re Young*, 439 B.R. 217, 219 (Bankr. M.D. Fla. 2010) ("The action by the Bank in seeking direction from the Trustee was entirely consistent with this statutory framework and did not violate the automatic stay."); *In re Calvin*, 329 B.R. 589, 603 (Bankr. S.D. Tex. 2005) ("the Bank's administrative freeze…was neither a violation of § 362(a)(3) nor § 362(a)(7)").

Most recently, in the *Mwangi* case, the Ninth Circuit Court of Appeals held that section 542 allows Wells Fargo to seek instructions from the trustee, and to refuse to honor the debtors' orders, regarding the payment of prepetition account balances. *Mwangi (Cir.)*, 764 F.3d at 1178-79. The *Mwangi* case arose from similar facts as the instant case. There, as here, the debtors sought sanctions, claiming Wells Fargo violated the automatic stay when it placed an administrative pledge on prepetition account balances in favor of the trustee and prevented the debtors from accessing those balances. *Id.* at 1171. Although the Ninth Circuit Bankruptcy Appellate Panel had found that Wells Fargo had exercised control over

property of the estate in violation of section 362(a)(3) where the trustee had not given directions to Wells Fargo, *see Mwangi v. Wells Fargo Bank, N.A. (In re Mwangi)*, 432 B.R. 812, 823-24 (9th Cir. B.A.P. 2010) ("*Mwangi (BAP)*"), the Ninth Circuit ultimately rejected this view. *Mwangi (Cir.)*, 764 F.3d at 1178-79.

On remand from the BAP, the bankruptcy court held an evidentiary hearing and ruled that Wells Fargo had not damaged any interest of the *Mwangi* debtors.[7] In the meantime, the *Mwangi* debtors had filed a class action against Wells Fargo, alleging violations of section 362(a)(3). The bankruptcy court dismissed that class action for failure to state a claim, on grounds that only the trustee had standing and that the debtors could not allege injury to their inchoate interest in property that currently belonged to the estate. Memorandum Decision Dismissing Amended Adversary Complaint, *Mwangi v. Wells Fargo Bank, N.A.*, Adv. Pro. No. 11-01022 (Bankr. D. Nev. Sept. 27, 2011), *aff'd*, 473 B.R. 802 (D. Nev. 2012).

The Ninth Circuit affirmed the dismissal, holding that the *Mwangi* debtors could not state a claim for violation of section 362(a)(3) because the account funds "remained estate property, and the Debtors had no right to possess or control them." *Mwangi (Cir.)*, 764 F.3d at 1170-71. The Ninth Circuit also found that by seeking

---

[7]   The district court affirmed on appeal, *Mwangi v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 5774, at *14 (D. Nev. Jan. 15, 2014), and the Ninth Circuit affirmed that result based on its decision in the *Mwangi* class action appeal discussed herein. *Mwicharo v. Wells Fargo Bank, N.A. (In re Mwangi)*, 585 Fed. App. 939, 940-41 (9th Cir. Nev. 2014).

instructions from the trustee on how to proceed (rather than immediately delivering the funds to the trustee, such as by a cashier's check), Wells Fargo had not violated section 542(b) or wrongfully withheld estate property from the estate. *Id.* at 1178-79 ("Unlike § 542(a), § 542(b)...allows the entity to seek direction from the trustee, which is precisely what Wells Fargo did here.").

In its opinion, the Ninth Circuit stated that the Bankruptcy Code should be construed in a way that "prevents potential unwarranted liability on the part of third party possessors of estate property, who might otherwise have to choose either (1) to comply with § 542's turnover provisions, risking potential liability to the debtor for violation of § 362's automatic stay; or (2) to comply with the debtor's demands to control the property, risking liability to the trustee for violation of § 542's turnover provisions." *Id.* at 1176 n.4.

By contrast, in this case, the Bankruptcy Court's decision puts banks such as Wells Fargo squarely on the horns of that impossible dilemma.

### 2. *Wells Fargo Did Not Exercise Control Over Property of the Estate*

Wells Fargo's conduct did not violate section 362(a) for an additional reason: Wells Fargo did not exercise control over property of the estate.  Instructively, the Supreme Court has recognized that a temporary administrative freeze or hold on deposit accounts (pending determination of the obligor's rights) does not violate the automatic stay. *See Strumpf*, 516 U.S. 16, 21 (1995).

In *Strumpf*, Citizens Bank of Maryland refused to pay over account balances to a chapter 13 debtor for five days (while the bank filed a motion for relief from the automatic stay), in order to preserve a right of setoff. *Id*. at 17. The Supreme Court found that such conduct did not violate the automatic stay for two reasons.

*First*, the Supreme Court held that a temporary refusal to pay was not "exercising control" to begin with:

> [W]e are unpersuaded by respondent's additional contentions that the administrative hold violated §§ 362(a)(3) and 362(a)(6).… Respondent's reliance on these provisions rests on the false premise that petitioner's administrative hold took something from respondent, or exercised dominion over property that belonged to respondent. That view of things might be arguable if a bank account consisted of money belonging to the depositor and held by the bank. In fact, however, it consists of nothing more or less than a promise to pay, from the bank to the depositor, and petitioner's temporary refusal to pay was neither a taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise.

*Id.* at 21 (citations omitted).

*Second*, the Supreme Court refused to interpret section 362(a) in a way that would prohibit what section 542(b) permits:

> In any event, we will not give § 362(a)(3)…an interpretation that would proscribe what § 542(b)'s "exception" and § 553(a)'s general rule were plainly intended to permit: the temporary refusal of a creditor to pay a debt that is subject to setoff against a debt owed by the bankrupt.

*Id.*

In this case, Wells Fargo was not seeking to set off or otherwise withhold amounts owed to the estate, but instead promptly turned over control of the Estate Balances to the Trustee by asking for her directions, consistent with section 542(b)'s requirement to pay "to, or on the order of" the Trustee. There was no "refusal" (even a temporary one) to perform any promise that Wells Fargo owed to the Trustee, so the conduct here does not even rise to the level that the Supreme Court found to be acceptable in *Strumpf*. Wells Fargo could not violate section 362(a)(3) by complying with section 542(b).

Nevertheless, the Bankruptcy Court asserted that *Strumpf* must be construed narrowly, and thus applied only in cases involving setoff rights, because the protections of the automatic stay are so important that exceptions may be made only sparingly. *See* WF 202. That reasoning overlooks the fact that, rather than being at odds with the automatic stay, Wells Fargo's actions actually further the underlying goal of the stay: to preserve the estate against dismemberment by the self-help activities of parties in interest (in this situation, the improper effort by the Debtors to consume the Estate Balances).  In any event, the Bankruptcy Court also missed two important aspects of the Supreme Court's reasoning:

*First*, the recognition in *Strumpf* that a bank account "consists of nothing more or less than a promise to pay," and that a refusal to pay is "merely a refusal to perform [the bank's] promise" rather than taking control of the estate's property,

516 U.S. at 21, does not depend on whether the bank has setoff rights. The Supreme Court expressly considered the debtor's section 362(a)(3) argument in *Strumpf*, and rejected it even before considering the interaction of section 362(a)(3) with any Bankruptcy Code provisions relating to setoff rights. *Id.* (see first blockquote above). The Supreme Court could have limited its holding to setoffs, but it did not.

*Second*, the Supreme Court in *Strumpf* declined to interpret one provision of the Bankruptcy Code (*viz.*, section 362(a)(3)) in a way that would render another provision meaningless (*viz.*, section 542(b)'s exception for not requiring turnover of setoffs). *Id.* (see second blockquote above). That same principle squarely applies here. If section 362(a)(3) cannot override an obligor's *right* under section 542(b) to set off against amounts owed by a debtor, there is no basis for section 362(a)(3) to override the *primary requirement* under section 542(b) for the obligor to look to the trustee for instructions on paying the amounts it owes to the estate. One cannot say that doing what section 542(b) *permits* is not a stay violation, but doing what section 542(b) *requires* is sanctionable.

That Wells Fargo was not asserting a setoff did not change the relevance of *Strumpf* in the multitude of cases where courts have concluded that Wells Fargo's application of an administrative pledge in favor of trustees complies with section 542(b) and does not violate the automatic stay. *See, e.g., Jimenez*, 406 B.R. at 946-

47 (applying *Strumpf* where Wells Fargo had no setoff rights); *In re Randolph Towers*, 458 B.R. at 3-4 ("There simply is no logical way to treat the rationale of *Strumpf*…as limited to protection of the right of setoff."); *In re Phillips*, 443 B.R. at 65-66 (applying *Strumpf* where Wells Fargo had no setoff rights); *In re Bucchino*, 439 B.R. at 761, 775-76 (same); *In re Young*, 439 B.R. at 219 (same); *In re Calvin,* 329 B.R. at 603 (same).

The cases cited by the Bankruptcy Court not only misconstrue the Supreme Court's decision in *Strumpf* (for the reasons noted above), but are also inapposite. *See In re Megan-Racine Assocs., Inc.*, 203 B.R. 873 (Bankr. N.D.N.Y. 1996) (non-debtor unilaterally escrowed disputed payments owed to a chapter 11 debtor-in-possession under an executory contract), and *In re Holden*, 236 B.R. 156 (Bankr. D. Vt. 1999) (IRS indefinitely withheld the estate's post-petition tax refund as a *quid pro quo* for the chapter 13 debtor's missed payments under a confirmed debt adjustment plan).  In both of those cases, the debtor held the statutory role of estate representative—an important feature of chapter 11 and chapter 13 cases, and distinct from chapter 7 where the trustee displaces the debtor and has sole control of estate assets.[8] Thus, in the instant case, the Debtors were not the chapter 7 estate's representatives and had no present right to receive or control the Estate

---

[8]   In chapter 11 and 13 cases, the estate can be represented by the debtor, but a trustee is always appointed in chapter 7 cases.  *Compare* 11 U.S.C. §§ 1104, 1105, 1107, and 1302-04 *with* §§ 701-703.

Balances. And, far from withholding the Estate Balances to advance a conflicting interest as a creditor (which Wells Fargo did not have), Wells Fargo acknowledged the Trustee's exclusive right to control estate property and acted to turn over the Estate Balances to the Trustee, as required by section 542(b) and consistent with the purposes of the automatic stay.

### 3. The Bankruptcy Court's Interpretation of "Exercise Control" Is Too Broad

Notwithstanding *Strumpf* and all of the cases holding that Wells Fargo was not exercising control over property of the estate by looking to the Trustee for instructions on paying account balances owed to the estate, the Bankruptcy Court summarily concluded that "by placing an administrative pledge on the Debtors' accounts, Wells Fargo necessarily exercised control over property of the estate." WF 197.

According to the Bankruptcy Court, the plain meaning of "exercising control" is "to exercise restraining or directing influence over" or "to have power over." WF 199. That expansive definition, however, places Wells Fargo in the untenable predicament of being found to exercise control over estate property no matter what it does with respect to the Estate Balances.

The Bankruptcy Court suggested that Wells Fargo could avoid violating the automatic stay by continuing to pay estate property to, or on the order of, chapter 7 debtors until their trustees exerted their authority. *See* WF 203 ("[Wells Fargo] can

24

avoid this problem by simply waiting for the chapter 7 trustee to ask for the balance of any deposit accounts to be turned over."). But there is no reason why *permitting* debtors to access estate property without trustee approval would be any less an improper exercise of control (as broadly defined by the Bankruptcy Court) than *preventing* debtors from accessing the property.[9]  Furthermore, the plain text of section 542(b) needs several additional words in order to provide that account obligors must honor their obligations in accordance with directions from *either* the trustee *or the debtor, whoever makes demand first*. And, that approach would defeat the very concept of the bankruptcy estate being composed of the Debtors' assets as of the date of their bankruptcy filing. 11 U.S.C. § 541.[10]

The Bankruptcy Court also applied its definition of "exercising control" inconsistently. In explaining that debtors have a duty under section 521(a)(4) to "surrender" property to their trustees, the Bankruptcy Court observed that "[i]n this case, the Debtors…relinquish[ed] control of their bank accounts by listing the

---

[9]   The Bankruptcy Court also criticized Wells Fargo because the bank "did not create new deposit accounts in the trustee's name" instead of applying its administrative pledge.  WF 200.  However, nothing in the Bankruptcy Code or the Bankruptcy Rules directs or permits banks to do this on their own.

[10]   The Bankruptcy Court acknowledged that it is improper for the Debtors to seek to control the Estate Balances:  "While it may be true that Debtors' use of bank account funds was itself improper, Wells Fargo cannot use the Debtors' improper conduct to shield itself from the consequences of its own stay violation." WF207.  If Wells Fargo nevertheless acquiesced in that improper use, it would not be shielded: Wells Fargo would be vulnerable to the Trustee for letting property of the estate be taken without her consent.  *See* 11 U.S.C. § 542(c).

accounts on schedule B of their petition and by cooperating with the trustee." WF 206. Yet, when Wells Fargo similarly complied with its own statutory obligations and cooperated completely with the Trustee by seeking her instructions, the Bankruptcy Court somehow found the bank to be doing exactly the opposite of relinquishing control. If judged by the same standard the Bankruptcy Court applied to the Debtors, Wells Fargo likewise must have relinquished any control it had over the Estate Balances when it informed the Trustee of the existence of the Estate Balances and requested her directions. In fact, however, Wells Fargo never had control of the Estate Balances because control was always in the hands of the party entitled to instruct Wells Fargo on its payment obligation (first the Debtors, and then the Trustee upon commencement of the bankruptcy case).

The cases cited by the Bankruptcy Court do not support its reading of "exercise control." For example, the Bankruptcy Court quotes *Amplifier Research Corp. v. Hart*, 144 B.R. 693 (E.D. Pa. 1992), a chapter 11 case, for its explanation that Congress added the phrase "exercise control over" to section 362(a)(3) in order to protect "how the *debtor* use[s] his property." *See* WF 198-99 (emphasis added). But this statement does not support the notion that section 362(a)(3) protects estate property for use by chapter 7 debtors, whose estate property is under the supervision of a trustee.  In a chapter 11 case, where there is typically no trustee competing with the debtor over the estate's assets, the debtor would be the

party in control of estate property.[11]  The key is that section 362(a)(3) prohibits exercising control over property of the estate, but does not apply to protect the debtor or property of the debtor. Moreover, contrary to the Bankruptcy Court's expansive definition of "exercising control" as exercising restraining influence, *Amplifier Research* held that the non-debtor party was not controlling property of the estate by seeking to enjoin the chapter 11 debtor's allegedly tortious post-petition use of estate property. 144 B.R. at 695.

Likewise, *Thompson v. GMAC, LLC*, 566 F.3d 699 (7th Cir. 2009), was not a chapter 7 case but a chapter 13 case.  Like chapter 11, the purpose of chapter 13 is to "allow the debtor to reorganize and repay the majority of his debts without having to liquidate his assets." *Thompson*, 566 F.3d at 705. As a result, chapter 13 debtors are permitted "to retain the beneficial use of productive assets to effectuate this purpose." *Id.* But the same dynamic simply does not apply in a chapter 7 liquidation such as this one, where there can be no argument but that the Debtors' consumption of estate assets would not serve the interests of creditors.  Moreover, it is clear in *Thompson* that GMAC was withholding estate property from the estate itself, rather than from the debtor. 566 F.3d at 703 ("Here, GMAC exercised control over Thompson's vehicle when it refused to return it to the bankruptcy

---

[11]  As a result, in chapter 11 (and even chapter 13) cases, courts often conflate the debtor with the estate. These statements do not necessarily translate to chapter 7 cases, where the distinction between debtor and estate is meaningful.

estate upon request."). Wells Fargo was not withholding estate property from the estate, but making sure it was available to the estate.

The Bankruptcy Court also relied on a quote from the intermediate court in the *Mwangi* case[12] that has been obviated by the Ninth Circuit's holding that Wells Fargo had not violated section 542(b) or wrongfully withheld estate property from the estate. *See Mwangi (Cir.)*, 764 F.3d at 1178-79.[13]

### 4.   The Bankruptcy Court's Criticism of Wells Fargo's National Policy Is Irrelevant

The Bankruptcy Court erroneously focused on the *existence* of Wells Fargo's administrative pledge policy generally, rather than Wells Fargo's actual conduct in this case:

> For all of Wells Fargo's grandstanding about complying with § 542, the Court cannot find, on the evidence before it, that *Wells Fargo's policy on administrative pledges* complies with § 542(b)…. The fact that Wells Fargo describes its policy in terms of "risk tolerance," rather than the absolute mandates of the Code, reinforces the conclusion that Wells Fargo knows that *its policy* is not in compliance with § 542, as it argues.

WF 201 (emphasis added).

---

[12]   "[Wells Fargo] chose to hold the funds until a demand was made for payment that it alone deemed appropriate.  If that is not 'exercising control over' the funds, we don't know what is." WF200 (quoting *Mwangi (BAP)*, 432 B.R. at 823-24).

[13]   The quotation was also taken out of context.  The focus of the BAP's opinion was not Wells Fargo's placing of an administrative pledge *per se*, but rather the bank's *continuation* of the pledge after substantial time had passed without instructions from the trustee. *See* 432 B.R. at 825.  In this case, the Trustee instructed Wells Fargo only five days after the pledge was applied, and the bank complied on the very same day.

This statement confuses the purpose and risk of Wells Fargo's treatment of individual chapter 7 account balances. In the cases where it occurs, the risk that Wells Fargo takes is to allow individual chapter 7 debtors to have *any* access to account balances owed to the trustee on prepetition deposits. *All* account balances reflecting prepetition deposits are property of the bankruptcy estate under the exclusive control of the chapter 7 trustee. When it allows chapter 7 debtors to direct payment of amounts owed to the trustee (*i.e.*, when the prepetition balances are less than $5,000 in the aggregate), Wells Fargo voluntarily accepts the risk that the chapter 7 trustee could call on Wells Fargo to pay those amounts back to the bankruptcy estates if the amounts are not determined to be exempt. In the Debtors' case, Wells Fargo did not take that risk. It properly complied with the Bankruptcy Code's requirements by recognizing that the Estate Balances were property of the estate subject to the Trustee's control and direction and did not improperly pay the Estate Balances to, or on the order of, the Debtors.

The fact that Wells Fargo accommodates customers when it owes less than $5,000 to their chapter 7 trustee does not mean that Wells Fargo must accept the risk of giving all of its customers the right to control all amounts that are estate property no matter how large the amount. The only issue before the Court is whether Wells Fargo's conduct *in this case* complied with section 542(b), and as

demonstrated above, there is no question that Wells Fargo's *actual conduct* in this case complied with section 542(b).

### B. Wells Fargo's Conduct Could Not Have Caused the Debtors' Alleged Injury

The Bankruptcy Court should also be reversed where it erroneously concluded that the Debtors had standing in this case because Wells Fargo's conduct caused the Debtors' claimed injury. *See* WF 204-05.[14] However, as a matter of law, Wells Fargo's conduct did not cause (and could not have caused) the Debtors' alleged injury.

The penalty charged by Kohl's was not caused by Wells Fargo's conduct. While it is undisputed that the Debtors' payment to Kohl's was not honored by Wells Fargo due to an insufficiency of available funds, *see* WF 123, that insufficiency was not caused by anything Wells Fargo did. Rather, it was the result of section 541—the post-petition balance in the applicable account was too small to cover the Kohl's payment on the day it was presented to Wells Fargo, and the prepetition balance in that account was property of the bankruptcy estate under the

---

[14] Standing is a question of law reviewed *de novo* on appeal. *Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, 253 B.R. 336, 338 (S.D.N.Y. 2000) ("The question of standing is a matter of law and, as such, the Bankruptcy Court's decision is subject to *de novo* review by this Court."), *aff'd*, 262 F.3d 96 (2d Cir. 2001); *Adar 980 Realty*, 2014 U.S. Dist. LEXIS 108951, at *8-15 (applying a *de novo* review of the bankruptcy court's ruling on standing to move for a stay violation under sections 362(a) and (k)).

Trustee's exclusive control.[15]  The Debtors could not unilaterally decide to use those prepetition Estate Balances themselves, and Wells Fargo should not now be sanctioned for refusing to become complicit in that improper use.

As discussed above, pursuant to section 541, the Estate Balances became estate property upon commencement of the Debtors' bankruptcy case on March 7, 2014.  When Wells Fargo applied its administrative pledge on March 12, 2014, the Estate Balances were still exclusively property of the estate and the Debtors did not have a present right to control them—only the Trustee did.  Wells Fargo dutifully turned over control to the Trustee on the same day as discovering the Debtors' bankruptcy case, by asking the Trustee for her directions regarding payment of the amounts owed and informing the Debtors and their counsel that Wells Fargo would only follow the Trustee's directions regarding the Estate Balances. WF 113.

The Debtors cannot have been injured by an inability to use funds that they had no right to use at the time. *Mwangi (Cir.)*, 764 F.3d at 1177 ("[The Debtors] claim that the administrative pledge caused them injury during this period because even their inchoate interest [in the funds] was superior to any interest Wells Fargo might have had…. We reject the Debtors' argument. From the filing of the chapter

---

[15]   Further, as they acknowledge, the Debtors had post-petition funds available to them in other accounts which would have been sufficient to cover the payment to Kohl's. WF121. Although the Debtors had previously transferred post-petition funds between accounts, *id.*, they did not do so to meet this payment.

7 bankruptcy petition…to the end of the thirty-day objections period…. the Debtors had no right to possess or control the account funds… The Debtors thus failed to allege a plausible injury based on the operation of the administrative pledge."); *Jimenez*, 406 B.R. at 941 ("Because Debtor could not have accessed the accounts without the Trustee's permission…she suffered no injury caused by the administrative freeze."); *In re Kessler*, 2011 WL 1042617, at *2 (Bankr. S.D. Cal. 2011) ("The Trustee, as the estate's administrator, was the sole person with standing to assert injury arising from Wells Fargo's administrative freeze of the Estate Funds during the time period that the Debtors had no right to use these funds.").[16]

Instructively, the Debtors would have found themselves in the same position even without application of Wells Fargo's administrative pledge. Suppose that in order to comply with section 542(b)'s direction to pay "to, or the order of, the trustee," Wells Fargo had issued a cashier's check to the Trustee instead of placing an administrative pledge on the Estate Balances. The Debtors still would not have had sufficient available post-petition funds in their checking account to honor the Kohl's payment. *See* WF 285:22-286:7.   And, the Debtors still would have incurred a penalty, unless they had taken action to transfer sufficient post-petition

---

[16]   As already noted, the Bankruptcy Court acknowledged that the Debtors were not entitled to spend the Estate Balances.  *See* n.10 above.

balances into the applicable account to cover the payment (which were available in their other accounts at Wells Fargo). *See* WF 123 (Debtors acknowledged "there were sufficient unpledged balances in other accounts…to cover the payment").

Nevertheless, the Bankruptcy Court summarily concluded that "the Debtors were monetarily injured by the administrative freeze, which was placed on the account by Wells Fargo, thereby 'causing' the injury." WF 205.  Disagreeing with the Ninth Circuit and all the courts that have ultimately addressed this question, the Bankruptcy Court found the effectively uniform approach of those courts "not consistent with the Code and the practical realities of debtors' lives." *Id.*  As shown above, however, section 541 requires the conclusion that the Debtors' alleged injury could not have resulted from Wells Fargo's conduct.

## II. THE BANKRUPTCY COURT'S PUBLIC POLICY ARGUMENT IS BOTH IRRELEVANT AND WRONG

Finally, the Bankruptcy Court makes a public policy argument that—

Wells Fargo's policy of freezing funds upon filing makes it more likely that debtors will squirrel away secret stashes of cash prior to filing so that they can continue to meet their everyday needs. By eliminating unlawful policies such as this one, debtors will be encouraged to use bank accounts post-petition and a more accurate record of a debtor's financial situation will be available in the form of bank statements. The trustee and the Court will be better able to see what a debtor is spending money on and can choose to admonish (or not to admonish) that debtor accordingly—under the guidance of the Bankruptcy Code.

WF 204. This argument is irrelevant to the issue of whether Wells Fargo's conduct violated the automatic stay. It is also wrong.

The Bankruptcy Court ignores the statutory structure that the Bankruptcy Code establishes for individuals seeking relief under chapter 7. That process allows an individual debtor to retain every asset he or she earns after the bankruptcy filing, without regard to his or her debts at the time of the filing. In return, a trustee takes control of all of the debtor's assets at the time of the filing, which become the bankruptcy estate. 11 U.S.C. § 541. If the debtor claims any property as exempt from the estate, and if the trustee or a creditor objects to that claim in a timely manner, the bankruptcy court determines what assets of the bankruptcy estate are exempt and what assets are available for creditors while the individual debtor focuses on his or her fresh start going forward.

For financial assets, the Bankruptcy Code requires that everyone that owes an obligation payable to, or on the order of, the debtor must instead pay that obligation to, or on the order of, the trustee. *Id.* § 542(b). This assures that the trustee obtains control of liquid assets. If the obligor pays someone other than the trustee after learning of the bankruptcy filing, the obligor faces liability to the bankruptcy estate for the amounts paid improperly. As noted earlier, there is no exception in section 542(b) that excuses Wells Fargo from recognizing the chapter

7 trustee's rights to the amounts owed until the trustee makes a formal request, as the Bankruptcy Court proposed.

The Bankruptcy Court's approach places a tremendous burden on trustees to race to identify amounts owed to the debtor and send notice to the correct party demanding payment to the trustee, all before the debtor receives or directs those payments. Such an approach would tempt (if not encourage) debtors to make "inadvertent" omissions and errors when disclosing bank accounts and obligor addresses to the trustee, since any delay by the trustee in making its demand would enable the debtor to make a single large withdrawal to fund cash payments or other payment options outside of the bank account. Rather than providing a record of the debtor's payments to examine, the Bankruptcy Court's approach would make it more difficult (if not impossible) for the trustee to track down the debtor's illicit transactions. Sections 541 and 542(b) avoid these problems by (i) clearly demarcating what is part of the bankruptcy estate, and (ii) giving the trustee exclusive control over it. Those sections also require obligors to pay the trustee even if the debtors fail to notify the trustee that the obligations exist.

In addition, the Bankruptcy Court's proposal of requiring formal notice from the trustee to the financial institution puts Wells Fargo and other obligors at risk. One department of the bank could get a notice from the trustee before the operations department of the bank could stop honoring transactions directed by the

debtor, leaving Wells Fargo exposed to the trustee for payments made after the notice. Under the Bankruptcy Code structure, Wells Fargo can monitor public filings for chapter 7 cases filed by its customers. Knowledge of the filing provides the definitive time for recognizing the trustee's right to control the accounts. Wells Fargo then can and does act in recognition of the trustee's rights.

This is the structure clearly implemented by the Bankruptcy Code. The Bankruptcy Court's policy argument should be addressed to Congress rather than unilaterally imposed so as to change the results from the plain language of the statute. Every other court that reached the issue has recognized the propriety of Wells Fargo honoring the trustee's right to direct payment from the account. This Court ought to maintain the integrity of the Bankruptcy Code by correcting the error of the Bankruptcy Court below.

If a debtor truly has an immediate need for amounts owed to the trustee and can establish his or her likely right to an exemption for some amount, the debtor can ask the trustee to direct Wells Fargo to pay in accordance with the debtor's request. In this case, the Trustee responded to Wells Fargo's request for instructions even before the Debtors asked the Trustee to direct Wells Fargo to pay, and Wells Fargo made the Estate Balances available to the Debtors the same day it was instructed to do so. Even if the Trustee had not responded to Wells Fargo's

request or acceded to the Debtors' request, the Debtors could have sought *ex parte* relief from the Bankruptcy Court if they had a solid basis for their request.

All of these approaches would (i) preserve the integrity of the property of the estate, (ii) recognize the proper role of the trustee, who is responsible for the property of the estate, and (iii) protect obligors from paying twice if they paid without the trustee's approval.

Finally, the Bankruptcy Court's approach undermines the formation of the bankruptcy estate as of the filing date for far more than amounts owed by financial institutions. The Bankruptcy Court's approach would apply equally to other obligations owed to the debtor that constitute estate property. For example, promissory notes, tax refunds, and debtor's accounts receivable would all be available to the debtor prior to the trustee notifying each obligor to pay the amounts owed to the trustee for the bankruptcy estate. All of these obligations to the estate are covered by section 542(b).

Congress made a conscious policy decision to form the chapter 7 bankruptcy estate as of the case filing, and codified that policy in the Bankruptcy Code. Parties that owe prepetition obligations to chapter 7 debtors must look solely to the chapter 7 trustee for orders on paying those obligations. Wells Fargo did exactly as it is required to do. There can be no violation of the automatic stay by Wells Fargo for complying with its statutory duties to the Trustee. Moreover, the

Bankruptcy Court is not permitted to replace its view of proper policy with that adopted by Congress in enacting the Bankruptcy Code.  The Trustee is responsible for the bankruptcy estate. The Debtors are not. The Bankruptcy Court had no basis to ignore that statutory structure by imposing its own policy preference for the Debtors to retain control, and then find that Wells Fargo violated the stay because it did what the statute requires.

## III.   THE REMAINING PROVISIONS CITED BY THE DEBTORS ARE INAPPLICABLE

In their Motion, the Debtors also contended that Wells Fargo violated sections 362(a)(1) and (a)(6). *See* WF 006-07. By their terms, however, these provisions prohibit acts by *creditors* to pursue prepetition rights and collect on prepetition claims.  As the Debtors acknowledged numerous times, Wells Fargo is not a creditor. *See, e.g.,* WF 003-04; WF 007.  As a result, sections 362(a)(1) and (a)(6) are inapplicable to this case.

The Debtors also contended that Wells Fargo violated section 525 of the Bankruptcy Code. *See* WF 007-08.  By its terms, however, that provision applies only to governmental units (which Wells Fargo is not) or with respect to employment discrimination (which is not at issue here). *See* 11 U.S.C. § 525(a)–(c). The Debtors even acknowledged as much. *See* WF 007-08.

Finally, the Debtors contended that Wells Fargo's treatment of them is "subject to" the equitable authority of bankruptcy courts under section 105(a) of

the Bankruptcy Code. *See* WF 007-08. However, section 105(a) only gives bankruptcy courts the power to effectuate other provisions of the Bankruptcy Code. *Smart World Techs., LLC v. Juno Online Servs. (In re Smart World Techs., LLC)*, 423 F.3d 166, 184 (2d Cir. 2005) ("This Court has long recognized that section 105(a) limits the bankruptcy court's equitable powers, which must and can only be exercised within the confines of the Bankruptcy Code.  It does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity."); *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.").  Here, there has been no violation of any section of the Bankruptcy Code, and the Debtors may not use section 105(a) to manufacture one.

## CONCLUSION

The Bankruptcy Court's decision is inconsistent with chapter 7 of the Bankruptcy Code, which, together with other parts of the Bankruptcy Code, provides that the assets of the chapter 7 estate are fixed as of the date of the bankruptcy filing and are not subject to control and dissipation by debtors.  These statutory procedures and the language of the Bankruptcy Code must not be ignored or distorted for a result that the Bankruptcy Court thinks would be more favorable

to debtors. Creditors, banks, and trustees are all put at risk by such singular interpretations of the Bankruptcy Code.

For all of the reasons set forth above, Wells Fargo respectfully submits that the Bankruptcy Court's orders granting the Debtors' Motion should be reversed.

Dated:  New York, New York
      April 2, 2015

Respectfully submitted,

PILLSBURY WINTHROP
SHAW PITTMAN LLP

By: */s/ Christopher R. Mirick*

Christopher R. Mirick, Esq.
Samuel S. Cavior, Esq.
1540 Broadway
New York, NY 10036
(212) 858-1000 (Phone)
(212) 858-1500 (Fax)

*Counsel for Appellant,*
*Wells Fargo Bank, N.A.*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    Pursuant to the Court's endorsed order entered on March 6, 2015, granting leave to file up to 40 pages, this principal brief is 40 pages (excluding pages containing the table of contents, tables of citations, and the addendum of statutory text).  This brief also complies with the type-volume limitations of Fed. R. Bankr. P. 8015(a)(7)(B) because it contains 9,805 words (excluding the parts of the brief exempted by Fed. R. Bankr. P. 8015(a)(7)(B)(iii)).

2.    This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and the type style requirements of Fed. R. Bankr. P. 8015(a)(6) because the principal text and footnotes have been prepared in a 14-point proportionally-spaced typeface (Times New Roman) using Microsoft Word.

Dated:  New York, New York           Respectfully submitted,
       April 2, 2015

                                    PILLSBURY WINTHROP
                                    SHAW PITTMAN LLP

                                    By: */s/ Christopher R. Mirick*

                                    Christopher R. Mirick, Esq.
                                    Samuel S. Cavior, Esq.
                                    1540 Broadway
                                    New York, NY 10036
                                    (212) 858-1000 (Phone)

                                    *Counsel for Appellant,*
                                    *Wells Fargo Bank, N.A.*

## **BANKR. RULE 8014(d) ADDENDUM**

### 11 U.S.C. § 105(a)

**§ 105. Power of court**

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.  No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

<u>11 U.S.C. § 362(a)</u>

## § 362. Automatic stay

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

<u>11 U.S.C. § 362(k)</u>

## § 362. Automatic stay

\*\*\*

(k)   (1) Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

      (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

<u>11 U.S.C. § 525</u>

## § 525. Protection against discriminatory treatment

(a) Except as provided in the Perishable Agricultural Commodities Act, 1930, the Packers and Stockyards Act, 1921, and section 1 of the Act entitled "An Act making appropriations for the Department of Agriculture for the fiscal year ending June 30, 1944, and for other purposes," approved July 12, 1943, a governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, deny employment to, terminate the employment of, or discriminate with respect to employment against, a person that is or has been a debtor under this title or a bankrupt or a debtor under the Bankruptcy Act, or another person with whom such bankrupt or debtor has been associated, solely because such bankrupt or debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

(b) No private employer may terminate the employment of, or discriminate with respect to employment against, an individual who is or has been a debtor under this title, a debtor or bankrupt under the Bankruptcy Act, or an individual associated with such debtor or bankrupt, solely because such debtor or bankrupt—

    (1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act;

    (2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or

    (3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.

(c)    (1) A governmental unit that operates a student grant or loan program and a person engaged in a business that includes the making of loans guaranteed or insured under a student loan program may not deny a student grant, loan, loan guarantee, or loan insurance to a person that is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, or another person with whom the debtor or bankrupt has been associated, because the debtor or bankrupt is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of a case under this title or during the pendency of the case but before the debtor is granted or denied a discharge, or has not paid a debt

that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.

(2) In this section, "student loan program" means any program operated under title IV of the Higher Education Act of 1965 or a similar program operated under State or local law.

<u>11 U.S.C. § 541(a)</u>

## § 541. Property of the estate

(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:

> (1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.

> (2) All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is—

>> (A) under the sole, equal, or joint management and control of the debtor; or

>> (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

> (3) Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.

> (4) Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.

> (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—

>> (A) by bequest, devise, or inheritance;

>> (B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree; or

>> (C) as a beneficiary of a life insurance policy or of a death benefit plan.

> (6) Proceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case.

> (7) Any interest in property that the estate acquires after the commencement of the case.

\*\*\*

<u>11 U.S.C. § 542</u>

## § 542. Turnover of property to the estate

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

(b) Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

(c) Except as provided in section 362(a)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity other than the trustee, with the same effect as to the entity making such transfer or payment as if the case under this title concerning the debtor had not been commenced.

(d) A life insurance company may transfer property of the estate or property of the debtor to such company in good faith, with the same effect with respect to such company as if the case under this title concerning the debtor had not been commenced, if such transfer is to pay a premium or to carry out a nonforfeiture insurance option, and is required to be made automatically, under a life insurance contract with such company that was entered into before the date of the filing of the petition and that is property of the estate.

(e) Subject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee.