UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
In re:

Rodney Wayne Weidenbenner and
Michele Ann Weidenbenner,                        Chapter 7
                                                 Case No. 14-35443 (CGM)
          Debtors                                (Bankr. S.D.N.Y.)
-------------------------------------------------------
Wells Fargo Bank, N.A.,

          Appellant,                             Case No. 15-cv-00244
                    v.                                    (KKM)

Rodney Wayne Weidenbenner and
Michele Ann Weidenbenner,

          Appellees.
-------------------------------------------------------

Appeal from Orders of the United States Bankruptcy Court
for the Southern District of New York (Morris, C.J.)

## BRIEF OF *AMICUS CURIAE* NATIONAL ASSOCIATION OF CONSUMER BANKRUPTCY ATTORNEYS

LINDA TIRELLI, ESQ.
ATTORNEY FOR *AMICUS CURIAE*
NATIONAL ASSOC. OF CONSUMER
BANKRUPTCY ATTORNEYS
Garvey Tirelli & Cushner, Ltd.          On Brief:  Tara Twomey
50 Main Street, Suite 390               National Consumer
White Plains, NY 10606                  Bankruptcy Rights Center

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Fed R. Bankr. P. 8026 and Fed. R. App. P. 26.1(a), *amicus curiae*, The National Association of Consumer Bankruptcy Attorneys states that it is a nongovernmental corporate entity that has no parent corporations and does not issue stock.

# TABLE OF CONTENTS

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ..................................ii

TABLE OF AUTHORITIES ............................................................................iv

STATEMENT OF INTEREST OF *AMICUS CURIAE* ......................................1

SUMMARY OF ARGUMENT ..........................................................................3

ARGUMENT.....................................................................................................3

I.  Statutory Framework ..................................................................................3

      The Bankruptcy Estate and Exemptions....................................................2
      Turnover Provisions...................................................................................4
      The Automatic Stay ..................................................................................5

II.  Wells Fargo's Administrative Freeze in this Case Did Not Comply With
     the Bankruptcy Code ................................................................................ 6

    A. Debtor Has Standing to Prosecute Violations of Section 362 ................ 10

    B.  Wells Fargo's action in freezing debtor's account is an exercise of
       control over property of the estate that violates section 362(a)(3).......... 13

    C.   Debtors have a property interest in their bank account ........................ 18

    D. *Strumpf* is not applicable here where Wells Fargo had no rights
       to set-off ................................................................................................ 21

CONCLUSION ............................................................................................. 25

# TABLE OF AUTHORITIES

## Cases

*Alcantra v. Citimortgage, Inc. (In re Alcantara),*
389 B.R. 270 (Bankr. M.D. Fla. 2008) ............................................................ 10

*Anderson National Bank v. Luckett,*
321 U.S. 233 (1943).................................................................................... 18, 22

*Barnhill v. Johnson,*
503 U.S. 393, 112 S.Ct. 1386 (1992)................................................................ 19

*In re Bell,*
225 F.3d 203 (2d Cir. 2000)............................................................................. 12

*Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (Matter of
USA Diversified Prods.),*
100 F.3d 53 (7th Cir. 1996) .............................................................................. 23

*Burlingham v. Crouse*,
228 U.S. 459, 473 (1913)................................................................................... 3

*In re Burr,*
8 U.S. 469 (1807)........................................................................................ 22, 23

*In re Carter*,
182 F.3d 1027 (9th Cir. 1999) ....................................................................... 7, 12

*Citizens Bank of Maryland v. Strumpf,*
516 U.S. 16 (1995)................................................................................... passim

*In re Colortran*,
210 B.R. 823, 826 (B.A.P. 9th Cir. 1997) .......................................................... 5

*In re Danduran*,
657 F.3d 749 (8th Cir. 2011) ....................................................................... 7, 12

*Drye v. United States*,
528 U.S. 49 (1999)........................................................................................... 18

*Harchar v. United States (In re Harchar),*
393 B.R. 160 (Bankr. N.D. Ohio 2008) ........................................................ 15

*Law* v. *Siegel,*
134 S. Ct. 1188 (2014) ..................................................................................... 1

*In re Moreira,*
173 B.R. 965 (Bankr. D. Mass. 1994) ........................................................... 11

*In re Mwangi,*
432 B.R. 812 (B.A.P. 9th Cir. 2010) ............................................................. 16

*North Georgia Finishing, Inc. v. Di-Chem, Inc.*
419 U.S. 601 (1975)................................................................................... 18, 22

*Rousey v. Jacoway,*
544 U.S. 320 (2005)........................................................................................... 4

*In re Sharon,*
234 B.R. 676 (B.A.P. 6th Cir. 1999) ............................................................... 5

*In re Small,*
486 Fed. Appx. 436 (5th Cir. 2008)................................................................ 11

*St. Paul Fire & Marine Ins. Co. v. Labuzan,*
579 F.3d 533 (5th Cir. 2009) .......................................................................... 11

*Taylor* v. *Freeland & Kronz,*
503 U.S. 638 (1992)........................................................................................... 3

*Thompson v. General Motors Acceptance Corp., LLC,*
566 F.3d 699 (7th Cir. 2009) ............................................................................ 6

*Town of Hempstead Emples. Fed. Credit Union v. Wicks (In re Wicks),*
215 B.R. 316 (E.D.N.Y. 1997) ....................................................................... 23

*United States v. National Bank of Commerce,*
472 U.S. 713 (1984).................................................................................... 18, 22

*United States v. Overman,* 424 F.2d 1142 (9th Cir.1970) ................................. 19

*United Student Aid Funds, Inc.* v. *Espinosa,*
559 U.S. 260 (2010) ....................................................................................1

*Valuepest.com of Charlotte, Inc. v. Bayer Corp.,*
561 F.3d 282 (4th Cir. 2009) .......................................................................... 23

*Weber* v. *SECFU (In re Weber),*
719 F.3d 72 (2d Cir. 2013).......................................................................... 1, 4

## Statutes and Rules

11 U.S.C. § 362(a) ................................................................................ 14, 21
11 U.S.C. § 362(a)(3)................................................................................ passim
11 U.S.C. § 362(a)(7)................................................................................ 21
11 U.S.C. § 362(f) ................................................................................ 7, 15
11 U.S.C. § 362(k) ................................................................................ 2, 11
11 U.S.C. § 507 ................................................................................4
11 U.S.C. § 522 ................................................................................ 12
11 U.S.C. § 522(b)(1)................................................................................ 12
11 U.S.C. § 522(l) ................................................................................ 23
11 U.S.C. § 541(a) ................................................................................3
11 U.S.C. § 541(b) ................................................................................3
11 U.S.C. § 542 ................................................................................ 8, 10, 12
11 U.S.C. § 542(a) ................................................................................ 4, 13, 14
11 U.S.C. § 542(b) ................................................................................ passim
11 U.S.C. §
549................................................................................ 10
................................................................................
11 U.S.C. § 553 ................................................................................ 6
11 U.S.C. § 553(a) ................................................................................ 5, 7, 14
11 U.S.C. § 704 ................................................................................4
11 U.S.C. § 726 ................................................................................4

FED. R. BANKR. P. 1007(b) ................................................................................9

FED. R. BANKR. P. 4002(a)(3) ...........................................................................9

FED. R. BANKR. P. 4003(c).................................................................. 7, 12, 24

**Legislative Materials**

H.R. REP. No. 95-595 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 ...............4

## STATEMENT OF INTEREST OF NACBA

Incorporated in 1992, the National Association of Consumer Bankruptcy Attorneys ("NACBA") is a non-profit organization of more than 3,000 consumer bankruptcy attorneys nationwide.

NACBA's corporate purposes include education of the bankruptcy bar and the community at large on the uses and misuses of the consumer bankruptcy process. Additionally, NACBA advocates nationally on issues that cannot adequately be addressed by individual member attorneys. It is the only national association of attorneys organized for the specific purpose of protecting the rights of consumer bankruptcy debtors. NACBA has filed *amicus curiae* briefs in various courts seeking to protect the rights of consumer bankruptcy debtors. *See*, *e.g.*, *Law* v. *Siegel*, 134 S. Ct. 1188 (2014); *United Student Aid Funds, Inc.* v. *Espinosa*, 559 U.S. 260 (2010); *Weber* v. *SECFU (In re Weber)*, 719 F.3d 72 (2d Cir. 2013).

The NACBA membership has a vital interest in the outcome of this case. The turnover provision of 11 U.S.C. 542 and the automatic stay provision found in 11 U.S.C. 362 serve to protect debtors and creditors by establishing and maintaining the bankruptcy estate for appropriate distribution. By placing administrative holds on some accounts belonging to depositors who have filed bankruptcy petitions, and, as in this case, failing to immediately turn the funds

over to the trustee or release them to the debtor, Wells Fargo has exercised impermissible control over funds which Debtor has claimed as exempt and which are necessary to Debtors' daily maintenance. Additionally, Wells Fargo's actions constitute a failure to comply with its statutory turnover obligation.

## SUMMARY OF ARGUMENT

Wells Fargo's practice of placing administrative holds on its depositors' accounts when it learns that a depositor has filed bankruptcy constitutes an exercise of control over property of the bankruptcy estate in violation of 11 U.S.C. 362(a)(3) and 542(b). The bankruptcy did not err in concluding that Wells Fargo violated the automatic stay. The bankruptcy court did not err in concluding that Wells Fargo had an obligation to comply with the turnover provisions of 542(b) and that Wells Fargo unilaterally limited access to the debtors' funds, absent any direction from the bankruptcy trustee. Finally, the bankruptcy court did not err in finding that the debtors themselves, and not the estate, suffered injury by the actions of Wells Fargo and were entitled to damages under 11 U.S.C. 362(k).

**ARGUMENT**

**I**. **Statutory Framework**

  ***The Bankruptcy Estate and Exemptions***.  Bankruptcy law reflects a balancing act in which Congress has established the rules for adjusting debtor-creditor relationships. The importance of this regime to the national welfare, and the delicacy of the task, are suggested by the Framers' assignment to Congress of the power to "establish . . . uniform Laws on the subject . . ." U.S. CONST., art. I, § 8, cl. 4.  The two main purposes of bankruptcy are to provide a fresh start to the debtor and to facilitate the fair and orderly repayment of creditors to the extent possible.  *See Burlingham v. Crouse*, 228 U.S. 459, 473 (1913).  To achieve these dual goals, the Bankruptcy Code first creates a bankruptcy estate upon commencement of a case. 11 U.S.C. 541(a).  Section 541(a) defines the bankruptcy estate and contains an expansive definition of property that includes all debtors' legal or equitable interests in property whether tangible or intangible, real or personal.

  Some property, however, is specifically excluded from becoming property of the estate. 11 U.S.C. 541(b).  Other property initially considered part of the bankruptcy estate may be removed from the estate through the exemption process. *See Taylor* v. *Freeland & Kronz*, 503 U.S. 638, 642 (1992) (Bankruptcy Code "allows the debtor to prevent the distribution of certain

property by claiming it as exempt"). Exemptions serve the overriding purpose of helping the debtor to obtain a fresh start by maintaining essential property. *See* H.R. REP. No. 95-595, at 117 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6078 (purpose of this scheme is to provide "adequate exemptions and other protections to ensure that bankruptcy will provide a fresh start."); *Rousey v. Jacoway*, 544 U.S. 320, 322, 325 (2005).

Exempt property is removed from the bankruptcy estate and shielded from administration by the trustee. In chapter 7, the trustee may sell property of the estate that is not exempt and distribute the proceeds to creditors in accordance with the priorities set forth in the Bankruptcy Code. *See* 11 U.S.C. 704(a)(1) (the trustee shall collect and reduce to money property of the estate); 507 (setting forth priorities for distribution); 726 (setting forth order of distribution).

***Turnover Provisions***.  In order to facilitate the administration of the estate, any "entity, other than a custodian, in possession, custody, or control" of estate property "shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."  11 U.S.C. 542(a); *see Weber v. SEFCU*, 719 F.3d 72, 75-76 (2d Cir. 2013).  Section 542(b) mandates the same for an entity that owes certain kinds of debts to the debtor.  Specifically, under section 542(b), "an

entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.....”  In other words, in the absence of a right to setoff, section 542(b) forces an entity to pay the debt immediately. *See Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 20 (1995) (holding that setoff under section 553(a) is an exception to 542(b)’s rule requiring immediate payment of the debt to the trustee).

 *The Automatic Stay*.  The automatic stay is a fundamental cornerstone of the bankruptcy system established under the Bankruptcy Code.  It is triggered instantly upon the filing of a bankruptcy petition and operates to stay, among other things, “any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.”  11 U.S.C. 362(a)(3); *In re Colortran,* 210 B.R. 823, 826 (B.A.P. 9th Cir. 1997) (vacated on other grounds by *In re Colortran*, 165 F.3d 35 (9th Cir. 1998)).  “An individual injured by any willful violation of a stay . . . shall recover actual damages, including costs and attorneys’ fees, and, in appropriate circumstances, may recover punitive damages.”  11 U.S.C. 363(k)(1).  “Freezing” or otherwise withholding property is the essence of  “exercising control” over property of the estate.  *See In re Sharon*, 234 B.R. 676, 682 (B.A.P. 6th Cir. 1999); *accord*

*Thompson v. General Motors Acceptance Corp., LLC*, 566 F.3d 699, 702-03 (7th Cir. 2009) ("Holding onto an asset, refusing to return it, and otherwise prohibiting a debtor's beneficial use of an asset all fit within this definition, as well as within the commonsense meaning of the word.").

## II.  Wells Fargo's Administrative Freeze in this Case Did Not Comply With the Bankruptcy Code

Wells Fargo is one of the nation's largest banks. It has adopted the nationwide practice of affirmatively seeking information about whether its depositors have filed for bankruptcy. Upon learning that a depositor has filed for relief, in some but not all cases,[1] Wells Fargo "freezes" the debtor's account, even when Wells Fargo claims no right to set off under section 553.[2]  Wells Fargo's account freezes do not distinguish between exempt and non-exempt funds, nor do they distinguish between pre-petition and post-petition deposits.[3]

Here, at the time of filing their petition for relief, Debtors had four deposit accounts with Wells Fargo.  WF:196.[4]   The Debtors claimed as exempt the total amount of the balance in the bank accounts.  *Id.*  That claim of

---

[1] According to Wells Fargo, it freezes debtors' accounts only if the aggregate balance of funds the bank owes the estate is $5,000 or more. WF:197-198.

[2] To the best knowledge of *amicus curiae*, Wells Fargo is the only large bank with a national policy of freezing debtors' account in the absence of a right to set off.  No court or trustee has questioned the practices of all other major banks that do not freeze accounts.

[3] This is true at the outset. At some point after the freeze is placed upon the account, the bank makes a determination of which portion of the account funds was deposited post-petition, and makes those funds alone available to the debtor for withdrawal.  WF:234-237.

[4] WF:__ citations refer to the Appendix to Brief of Appellant Wells Fargo Bank, N.A.

exemption was presumptively valid.  *See* Fed. R. Bankr. P. 4003(c) (objecting party has burden to prove exemption improperly claimed); *In re Danduran*, 657 F.3d 749, 754 (8th Cir. 2011); *In re Carter*, 182 F.3d 1027, 1029 n.5 (9th Cir. 1999).  Five days after, the Debtors' filed for bankruptcy, Wells Fargo placed an "administrative pledge" on all four of the Debtors' accounts in the aggregate amount of $6,923.54.  WF:196.  The administrative pledge effectively froze the Debtors' bank accounts without their consent so that they were unable to access the funds pledged.  *Id*.  The funds were not paid over to the Trustee.  WF:197. Instead, Wells Fargo maintained control of the account by, for example, refusing to pay draft on the order of the Debtors.

Wells Fargo did not seek relief from the automatic stay before freezing Debtors' accounts, as it could have done if it felt the interests of the estate were in jeopardy.  *See* 11 U.S.C. 362(f) (permitting ex parte relief from stay).  Wells Fargo did not in fact pay the funds to the Trustee.  *See Strumpf*, 516 U.S. at 20 (1995) (holding that setoff under section 553(a) is an exception to 542(b)'s rule requiring immediate payment of the debt to the trustee).  Nor did Wells Fargo move the funds into an account separately titled in the name of the trustee. Rather Wells Fargo froze Debtors' accounts and sent them letters effectively stating that the Bankruptcy Code required Wells Fargo to hold the funds for the benefit of the estate in order to maintain the status quo. WF:021.

Contrary to Wells Fargo's assertion, the Bankruptcy Code contains no such requirement that third parties hold property of the estate for the benefit of the estate.  Indeed, exercising control over property of the estate in that manner violates the automatic stay.  Further nothing in section 542(b) *requires* Wells Fargo to hold funds for the benefit of the estate instead of paying funds immediately to the trustee.

By freezing Debtors' accounts and neither seeking relief from the stay nor immediately paying the funds to the Trustee, Wells Fargo essentially imposed an extra-judicial temporary restraining order on the Debtors' account.  However, the Bankruptcy Code and the court did not delegate the responsibility of holding funds on behalf of the estate to Wells Fargo.  That is, while Wells Fargo argues that its policy assists the trustee and protects creditors, the Bankruptcy Code does not charge or obligate Wells Fargo to serve either of those functions.  Further, Wells Fargo's arbitrary determination that certain debtors (those with accounts totaling more $5,000 in the aggregate) should have their accounts frozen, while others are permitted to freely draw funds belies this policy rationale.

Wells Fargo had other options short of freezing Debtors' accounts.  Like all other major banks, and consistent with Wells Fargo's own policy for accounts under $5,000, Wells Fargo could have done nothing and waited until

the Trustee made a request for the funds.  Because the Trustee received

information with the petition identifying bank accounts and balances,[5] as well

as a schedule of claimed exemptions, the Trustee was in the best position to

determine whether the Debtors were permitted to access to the funds.  As a

party in interest, if Wells Fargo was concerned that estate property—debtors'

bank accounts—would be dissipated or that it would be subject to liability, it

could have filed an ex parte motion pursuant to section 362(f).  Such motion

could have been accompanied by the funds from the debtors' account payable

to the Trustee or the bankruptcy court clerk.  Either approach strikes a better

balance among the parties' interests by ensuring that a non-creditor, third-party

like Wells Fargo does not decide unilaterally and extra-judicially to deny the

Debtors access to necessary funds.  Wells Fargo could have complied with both

the automatic stay and the provisions of section 542(b), but instead it chose to

apply a policy under which Wells Fargo determines when it will "preserve"

funds for the benefit of the estate—aggregate funds of $5,000 and over—and

when it will do nothing.

> Wells Fargo's professed concern over the preservation of estate assets is

---

[5] Federal Rule of Bankruptcy Procedure 1007(b) requires a debtor to file schedules of assets
and liabilities and claimed exemptions with the petition for relief.  If schedules are not filed
with the petition, the debtor must "inform the trustee immediately in writing" of accounts
subject to debtor's withdrawal or order.  Fed. R. Bank. P. 4002(a)(3).

also misplaced.  The Trustee has a number of tools available to marshal estate assets.  For example, the Trustee would have recourse to recover funds improperly disbursed at the Debtors' direction.  If the Trustee believed that the funds were not exempt as the Debtors claimed and subject to administration, she could seek turnover of the funds from the creditor that improperly received the funds post-petition.  *See* 11 U.S.C 549 (providing for avoidance of post-petition transfers of estate assets).  In this case, because the Trustee agreed the funds were exempt, there would have been no need for any further action.  Wells Fargo employed a process that was both unnecessary and inefficient.

Wells Fargo's application in this case of its general policy to freeze debtors' accounts with an aggregate balance of $5,000 or more does not comport with the requirements of the Bankruptcy Code.  So long as Wells Fargo can comply with both section 362 and 542, it should be required to do so.  Its choice to maintain control over Debtors' accounts, which caused the Debtors actual harm, is a violation of the automatic stay.

## A.  Debtor Has Standing to Prosecute Violations of Section 362.

Under traditional constitutional precepts, a plaintiff has standing if he can show that: 1) he has an injury, 2) the injury is traceable to the alleged misconduct of the defendant, and 3) that a favorable outcome is likely to redress the injury. *Alcantra v. Citimortgage, Inc. (In re Alcantara),* 389 B.R. 270

10

(Bankr. M.D. Fla. 2008).  Wells Fargo contends that the debtors do not have

standing because the funds in their accounts immediately became part of the

bankruptcy estate upon the filing of the petition. It argues that it would be the

estate, and by extension, the Trustee that would have standing to prosecute an

injury, not the debtors themselves.  However, courts have rejected this

argument and held that debtors and creditors are "entities whose grievances fall

'within the zone of interests' protected by § 362(k)."  *St. Paul Fire & Marine*

*Ins. Co. v. Labuzan*, 579 F.3d 533, 543 (5th Cir. 2009); *see also In re Small*,

486 Fed. Appx. 436, 438 (5th Cir. 2008) (holding chapter 7 debtor had standing

to bring an action for violation of the stay, and rejecting argument that only

chapter 7 trustee had standing); *In re Moreira*, 173 B.R. 965, 973 (Bankr. D.

Mass. 1994) (holding chapter 7 debtor had standing to bring stay violation

proceeding asserting improper set off and similar to that later decided by the

Supreme Court in *Strumpf*).

 As the bankruptcy court noted, this logic fails, because Wells Fargo was

content to have a penalty levied directly against the debtors (not the estate)

when the debtors drew a check against funds upon which the bank had

unilaterally placed a freeze.  WF:196.   Even if it was ultimately determined

that the account funds should be deemed part of the estate, Wells Fargo did

cause the injury (the penalty), and a favorable decision from the court can

redress such an grievance.

Under section 522, a debtor is entitled to and may claim certain items of personal property (intangible or not) exempt from inclusion in the bankruptcy estate and are to be retained by the debtor for their own use.  The claim of exemption is presumptively valid as the objecting party has the burden of proving that exemptions are not properly claimed.  Fed. R. Bank. P. 4003(c); see *In re Danduran*, 657 F.3d 749, 754 (8th Cir. 2011); *In re Carter*, 182 F.3d 1027, 1029 n.5 (9th Cir. 1999).   If no timely objection is made to the debtor's claimed exemptions, or if a timely objection is overruled, the exempt assets are withdrawn from the property of the estate by operation of law. 11 U.S.C. 522(b)(l); *In re Bell*, 225 F.3d 203, 215 (2d Cir. 2000)("It is well-settled law that the effect of this self-executing exemption is to remove property from the estate and to vest it in the debtor.");

The turnover provision of section 542 requires that any entity in possession or control of property that "thet trustee may use, sell, or lease. . . *or that the debtor may exempt*" must relinquish such property to the bankruptcy estate. (emphasis supplied)  Thus, the turnover provision in 542 is an action intended for the benefit of the debtor; when that property is subject to a claim of exemption, it is the *debtor* who suffers the injury by reason of its violation, and it is the *debtor* whose injury will be redressed by intervention by the court. The

12

estate suffers no injury by reason of a failure to turnover funds that will not be distributed to creditors, and therefore, the trustee has no incentive to pursue an action for violation of the turnover provision. Debtors accordingly have standing to challenge Wells Fargo's practice of freezing accounts and its failure to comply with section 542(b).

In practice, debtors such as those in this case, must be able to purchase food, household goods, and other necessities even though the exemption process may not be final.  The trustee, as the representative of the estate and with the duty to marshal and liquidate non-exempt assets, is the appropriate party to make the determination of whether debtors may use such funds.  Wells Fargo is not.  Wells Fargo is not charged by the Bankruptcy Code or the court with performing the role of the trustee.  It should not be permitted to use extra-judicial methods to undermine the exemption process.

## B.  Wells Fargo's action in freezing debtor's account is an exercise of control over property of the estate that violates section 362(a)(3).

Wells Fargo uses several different approaches in order to justify its stay violation. Whereas 542(a) generally regulates turn over of tangible property, 542(b), specially deals with debts. Section 542(b) provides, in pertinent part:

> …an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.

In its objection to the underlying motion, Wells Fargo claimed that it could not have exercised control over estate property because it was not a guardian of estate tangible property, but rather an entity that owed a debt to the debtor. WF Brief at 13. It does not matter. Wells Fargo is spinning its own wheels with this argument; the bank may not have had obligations under 542(a)[6], but Wells Fargo most certainly was required to comply with 542(b). It did not. Moreover, in its Joint Statement to the bankruptcy court, Wells Fargo conceded that the balances in the debtors' bank accounts became estate property once the petition was filed (WF:125). Thus, Wells Fargo's freeze on the funds constituted a prima facie violation of the stay.

Wells Fargo goes on to argue that the bankruptcy code forces them to serve two mistresses: sections 362 and 542. WF Brief at 15-16. Put simply, Wells Fargo is prohibited by 362(a) from violating the automatic stay. On the other hand, they are also required by 542(b) to turn over all property belonging to the debtor, which has now become property of the estate. It thus follows, they argue, that by complying with 542(b) they will be penalized by section 362.

---

[6] "(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. 542(a).

14

This argument is not sustainable. Wells Fargo could have complied with 542(b), by immediately relinquishing control of the funds in the debtor's account to the bankruptcy trustee. *See Strumpf*, 516 U.S. at 20 (1995) (542(b) requires immediate payment of the debt to the trustee). The only affirmative action the bank took was to prevent the debtor from gaining access to those funds for debtor's daily living expenses. If Wells Fargo was to be penalized by 362, it was because it withheld property from the estate, not because it complied with 542(b). Further, as noted above Wells Fargo, if Wells was really concerned with the automatic stay, it could have complied with both section 362 and 542(b) by filing for relief from the stay under section 362(f).

"In order to sustain an action for a violation of § 362(a)(3), three elements must be shown: (1) a property interest is involved; (2) the property interest is estate property; and (3) there occurred either an act to obtain possession of the estate property or there existed an act to exercise control over estate property." *Harchar v. United States (In re Harchar),* 393 B.R. 160, 167 (Bankr. N.D. Ohio 2008). First, the debtors clearly had a property interest in the funds, even if it was an inchoate one. Second, the property became estate property the moment the bankruptcy petition was filed. Finally, by denying the debtors access to the money and failing to seek relief from the stay or immediately turn the funds over to the estate, Wells Fargo maintained

15

possession and control of the property.

The bankruptcy court noted that it could not think of a better example of an entity exercising control over estate property, as proscribed by section 362(a)(3). Judge Morris recognized *In re Mwangi*, 432 B.R. 812 (B.A.P. 9th Cir. 2010), a case with substantially similar facts wherein debtors had four Wells Fargo accounts which became subject to Wells Fargo's freeze policy as soon as the debtors' bankruptcy petition was filed. Debtors claimed a 75% exemption interest in their accounts, and filed a complaint against Wells Fargo for a violation of section 362. When the bankruptcy court declined to find a stay violation, the Mwangi debtors appealed. In reversing the lower court, the Ninth Circuit noted that Wells Fargo was accountable both for its action (in exercising control over estate property in violation of 362), and inaction (in failing to turn the property over to the trustee pursuant to 542):

> "Wells Fargo asserts it did not exercise control over property of the estate. We disagree. Wells Fargo could have paid the account funds to the trustee; it did not. Wells Fargo could have released the account funds claimed exempt to the Appellants when demand was made; it did not. Wells Fargo could have sought direction from the bankruptcy court, by way of a motion for relief from stay or otherwise, regarding the account funds; it did not. Instead, it chose to hold the funds until a demand was made for payment that it alone deemed appropriate. If that is not 'exercising control over' the funds, we don't know what is."

*Mwangi*, 432 B.R. at 824-25.

Wells Fargo insists that the temporal nature of the hold means that there

was no taking. Instead, it claims that it was magnanimously preserving the funds for the benefit of the estate. The ends, however, do not justify the means. Wells Fargo is not the trustee. It is not charged with the management of the estate. It does not get to decide what happens to funds belonging to the debtor or the estate absent instruction from the trustee or the court.  That is, Wells Fargo does not get to unilaterally impose a restraining order preserving the status quo. In their objection, Wells Fargo notes that their administrative pledge policy "worked to everyone's benefit in this case" WF:060. The problem is that its administrative pledge policy has no foundation in the Bankruptcy Code. Moreover, the pledge policy made it impossible for the debtors to pay even their most fundamental living expenses, including insurance and medication; the freeze certainly did not work to their benefit.

As a matter of practice, Wells Fargo does not place administrative holds on debtors holding less than an aggregate of $5,000 in balances in all of their Wells Fargo accounts. By their own testimony, Wells Fargo claims that this dollar amount reflects their "risk tolerance comfort level" WF:271:8-24. In essence, Wells Fargo argues that it can pick and choose when to violate what it claims are its duties under the Bankruptcy Code.

In any event, Wells Fargo would not have violated section 362 if, like every other major bank, it had simply awaited instruction from the trustee prior

to taking any action or if it had sought relief from stay. If the trustee later discovered that the Debtors had impermissibly drawn from the funds, the Trustee and the bankruptcy court could address such misuse of estate property. Policing the Debtors was not Wells Fargo's job.

## C.   Debtors have a property interest in their bank account.

The Supreme Court has long held that depositors have cognizable property interests in bank accounts. *See e.g., United States v. National Bank of Commerce,* 472 U.S. 713, 724 n.8 (1984) ("[W]e agree with the Government that as a matter of federal law, the state-law right to withdraw money from a joint bank account is a 'right to property.'"); *Anderson National Bank v. Luckett,* 321 U.S. 233, 246 (1943) (acknowledging that a bank account creates a property right to demand payment and resort to courts if payment is refused); *North Georgia Finishing, Inc. v. Di-Chem, Inc.* 419 U.S. 601, 606 (1975) ("Here a bank account, surely a form of property, was impounded and, absent a bond, put totally beyond use during the pendency of the litigation on the alleged debt."); *Drye v. U.S.*, 528 U.S. 49, 58 (1999) ("[A] taxpayer's right under state law to withdraw the whole of the proceeds from a joint bank account constitutes 'property' or the 'right to property.").

Courts have consistently held that a bank account represents a depositor's

right to payment in an amount equal to the account balance. *See, e.g., Barnhill v. Johnson*, 503 U.S. 393, 112 S.Ct 1386, 1389 (1992) ("[a] person with an account at a bank enjoys a claim against the bank for funds in an amount equal to the account balance."). The intangible nature of the asset does not preclude the depositor from having a property interest in the account. *See, e.g., United States v. Overman,* 424 F.2d 1142 (9th Cir. 1970) (interest of spouses in marital property is intangible asset constituting property right).

Wells Fargo's position on this issue is contradictory. On the one hand, they acknowledge that they were bound by the provisions of 542(b), WF:075, relying on a definition of bank accounts proffered by the Supreme Court in *Citizens Bank of Maryland v. Strumpf,* 516 U.S. 16, 21 (1995) ("…In fact, however, it consists of nothing more or less than a promise to pay, from the bank to the depositor…."). They claim they could not have violated the stay precisely because they could not be in possession or control of something that was nothing more than a promise to pay.

At the same time, again relying on their "no harm-no foul" defense, they argue that their "administrative pledge" policy is actually designed to *assist* the bankruptcy trustee.  After parsing the semantics of an account hold versus an account freeze, the bank notes that the pledge "…was a measure in furtherance of preserving the estate's assets (not the bank's right of set-off) and of paying

the Trustee" WF:070 (emphasis in original).[7]   In fact, Wells Fargo's hold policy exists for the bank's own benefit. It is put in place in order to prevent the bank from being forced to potentially double-pay a debt to both a debtor and the bankruptcy trustee. Wells Fargo itself conceded that the policy is related to risk tolerance, which is also obvious given the bank's decision not to freeze any portion of an account balance that is less than $5,000[8]. The bank admits that the pledge is designed only to block the debtor's access to the funds—not the trustee's—but this is not a legal decision that the bank is empowered to make. Even if the policy wasn't self-serving, Wells Fargo does not get excused from the requirements of 542(b) because of its purported good intentions.

In any case, the debtors clearly had a property interest in the bank accounts and Wells Fargo clearly neglected to turn over control of that interest to the bankruptcy estate. Discussions of the nature of the property interest or of Wells Fargo's subjective motives are all subordinate to the fact that Wells Fargo wrested control of estate property absent any direction from the trustee.

---

[7] In trial testimony, the bank's witness noted that a "hold" is considered to be a freeze on the entirety of a customer's bank account. The term "pledge" is used to denote a freeze placed on a specific monetary portion of an account balance. WF:239

[8] Also in trial testimony, Judge Morris posed a provocative question that was not resolved. Why doesn't Wells Fargo freeze all balances, but for $5,000? A bankruptcy debtor holding $5,000 in account funds retains access to every penny; an account holder with $5,001 in account funds cannot access a single penny. WF:270:15-20. The question underscores the arbitrariness of the policy.

**D.** *Strumpf* **is not applicable here where Wells Fargo had no rights to set-off.**

When read in context, *Strumpf* does not alter the debtor's property interest in their bank accounts. Nor does it carve out in the bankruptcy code for violations of 362 via temporary account holds. In *Strumpf,* the Supreme Court contemplated "whether the creditor of a debtor in bankruptcy may, *in order to protect its setoff rights*, temporarily withhold payment of a debt that it owes to the debtor in bankruptcy without violating the automatic stay imposed by 11 U.S.C. § 362(a)" (emphasis added).  In finding that the bank's freeze on debtor's account did not violate section 362(a)(7), the Court relied on the facts that the bank's freeze was temporary, that the bank immediately sought instruction as to disposition of the funds from the trustee, and that the bank promptly sought relief from stay in order to determine its right to setoff. The Court also held that section 542(b) specifically excuses from turnover funds that the bankrupt's debtors claim as subject to setoff. It found that it would be an "odd construction" if section 542(b) excused from turnover amounts claimed as subject to setoff while section 362(a)(7) made it a violation of the stay not to turn over the funds.

The *Strumpf* Court briefly addressed the applicability of two other automatic stay provisions: sections 362(a)(3) and (6), stating: Respondent's reliance on these provisions rests on the false premise that

21

petitioner's administrative hold took something from respondent, or exercised dominion over property that belonged to respondent. That view of things might be arguable if a bank account consisted of money belonging to the depositor and held by the bank. In fact, however, it consists of nothing more or less than a promise to pay, from the bank to the depositor, . . . and petitioner's temporary refusal to pay was neither a taking of possession of respondent's property nor an exercising of control over it, but merely a refusal to perform its promise. *Id.* at 21.

*Strumpf* dealt specifically with a freeze placed on funds to protect the bank's right to setoff. The Court itself, immediately after making its broad declaration concerning the property interest in accounts, places its holding in perspective, stating:

In any event, we will not give §§ 362(a)(3) or (6) an interpretation that would proscribe what § 542(b)'s 'exception' and § 553(a)'s general rule were plainly intended to permit: the temporary refusal of a creditor to pay a debt that is subject to setoff against a debt owed by the bankrupt. *Id.* at 21.

Construing *Strumpf* to stand for the notion that a debtor has no property interest in his bank account runs counter to numerous other Supreme Court cases which recognize that a person has a property interest in a bank account from which state law permits them to withdraw funds. *See, e.g., National Bank of Commerce,* 472 U.S. at 724 n.8; *Luckett,* 321 U.S. at 246; *Di-Chem,* 419 U.S. at 606. Language from the Supreme Court cannot be interpreted to overrule previous Supreme Court precedent without specific indication from the Court that such is its intention. *See In re Burr,* 8 U.S. 469, 481 (1807) ("It would, however, be expected that an opinion which is to

overrule all former precedents, and to establish a principle never before recognized, should be expressed in plain and explicit terms."); *see also Valuepest.com of Charlotte, Inc. v. Bayer Corp.,* 561 F.3d 282, 288 (4th Cir. 2009) (Supreme Court does not typically overrule precedent *sub silentio*).

Other courts have rejected the claim that under *Strumpf* a bankruptcy debtor's interest in his bank account is not a "property interest." *See, e.g., Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (Matter of USA Diversified Prods.),* 100 F.3d 53 (7th Cir. 1996) (finding that claim that under *Strumpf* a bank account is not "property" for purposes of section 542, "borders on the frivolous."); *Town of Hempstead Emples. Fed. Credit Union v. Wicks (In re Wicks),* 215 B.R. 316 (E.D.N.Y. 1997) (applying *Strumpf,* court found four month hold constituted impermissible setoff).

On the basis of Supreme Court precedent, as well as its language in *Strumpf*, by which it confined its broad statement concerning the nature of a bank account to the facts before it, *Strumpf* cannot stand for the proposition that debtors' do not have a property interest in bank accounts.  Here, the Debtors having claimed the property interest exempt had, at the very least, an interest in the property contingent on no objection to the exemption being filed.  *See* 11 U.S.C. § 522(l) (property exempt if no objection filed); Fed. R. Bankr. P. 4003(c) (objecting party has the burden of proving claimed exemptions are

23

invalid).

Moreover, the bankruptcy court did not err in construing *Strumpf's* ruling to be applicable only in instances of set-off. Wells Fargo construes *Strumpf* to allow for temporary administrative holds, *regardless of whether or not the bank is attempting to preserve its set-off rights* (WF:072).  This is a convenient but inaccurate reading of *Strumpf*. One cannot excise the set-off issue from *Strumpf*—it is central to the Supreme Court's opinion.

Wells Fargo does not dispute the fact that 1) it held no creditor rights against debtors and 2) it did not place the freeze for the purpose of preserving its own rights to a set-off claim. The freeze policy is related to Wells Fargo's risk-tolerance comfort level. It did not place the hold in order to preserve its set-off rights. It placed the hold as a matter of policy practice. It thus cannot use *Strumpf* to excuse its stay violation.

## CONCLUSION

Wells Fargo's action in freezing debtors' account violated its obligation under section 542(b)and improperly exercised control over estate property in a violation 362(a)(3) for which debtors have standing to seek restitution. The bankruptcy court properly found that Wells Fargo's unilateral decision to place an administrative hold on estate property was a violation of the stay. Moreover, the bank's decision to place the freeze in lieu of turning over estate property to the trustee was a violation of 542(b). The bankruptcy court properly awarded actual damages, as well as fees and costs to the debtor.  For these reasons, the decision of the bankruptcy court should be affirmed.

Respectfully submitted,

LINDA TIRELLI, ESQ.
ATTORNEY FOR *AMICUS CURIAE*
NATIONAL ASSOC. OF CONSUMER
BANKRUPTCY ATTORNEYS
Garvey Tirelli & Cushner, Ltd.
50 Main Street, Suite 390
White Plains, NY 10606

## CERTIFICATION OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION

I hereby certify that the foregoing Brief contains 6,080 words, excluding the parts of the Brief exempted by Fed. R. Bankr. P. 8015(a)(7)(B)(ii) & 8017(d).  In preparing this certification, I relied on the Microsoft Word word-processing system to prepare the foregoing Brief.

The foregoing Brief complies with the typeface requirements of Fed. R. Bankr. P. 8015 & 8017 and the type style requirements of Fed. R. App. P. 8015(a)(5) & 8017 because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: June 15, 2015

/s/ Tara Twomey
Tara Twomey

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2015, I electronically filed the foregoing document with the Clerk of the Court for the Bankruptcy Appellate Panel for the Ninth Circuit by using the CM/ECF system.

I further certify that parties of record to this appeal who either are registered CM/ECF users, or who have registered for electronic notice, or who have consented in writing to electronic service, will be served through the CM/ECF system.

I further certify that some of the parties of record to this appeal have not consentedto electronic service. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within 3 calendar days, to the following parties:

Honorable Cecilia G. Morris
Chief Judge of the United States Bankruptcy Court
Southern District of New York
355 Main Street
White Plains, NY 12601

United States Trustee
Office of the United States Trustee
U.S. Federal Office Building
201 Varick Street, Room 1006
New York, NY 10014

Christopher Reed Mirick, Esq.
Pillsbury Winthrop Shaw Pittman, LLP (NY)
1540 Broadway
New York, NY 10036

/s/ Linda M. Tirelli
Linda M. Tirelli, Esq.