UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

RODNEY WAYNE WEIDENBENNER and
MICHELE ANN WEIDENBENNER,

      Debtors.
-------------------------------------------------------------X

WELLS FARGO BANK, N.A.,

      Appellant,

      v.

RODNEY WAYNE WEIDENBENNER and
MICHELE ANN WEIDENBENNER,

      Appellees.

No. 15-CV-244 (KMK)

OPINION & ORDER

<u>Appearances</u>:

Dario Di Lello, Esq.
William F. Scofield, Esq.
Law Offices of Dario Di Lello
Yonkers, NY
*Counsel for Debtor-Appellees*

Andrew Mark Troop, Esq.
Christopher Reed Mirick, Esq.
Pillsbury Winthrop Shaw Pittman, LLP
New York, NY
*Counsel for Appellant*

KENNETH M. KARAS, District Judge:

  Wells Fargo Bank N.A. ("Wells Fargo") appeals from two December 30, 2014 orders of the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"): the Order Finding Stay Violation and Awarding Damages, and the Order for Violation of the Automatic

Stay Pursuant to 11 U.S.C. § 362 (together, the "Orders"). (*See* Not. of Appeal (Dkt. No. 1).) For the reasons set forth below, the Orders of the Bankruptcy Court are reversed.

I. Factual and Procedural Background

Wells Fargo maintains an internal policy known as the Administrative Pledge Policy (the "Policy"). (Br. for Appellant ("Wells Fargo Br.") 6 (Dkt. No. 6).) Pursuant to this Policy, if an individual debtor files for bankruptcy and the debtor's balances on deposit are less than $5,000 in the aggregate, Wells Fargo does not limit the debtor's access to prepetition account funds; however, if the aggregate amount exceeds $5,000, Wells Fargo places an "administrative pledge" on the accounts, effectively freezing all prepetition funds, and "look[s] solely to the chapter 7 trustee to control payment of account balances that are property of the bankruptcy estate." (Wells Fargo Br. 6–7; *see also* A.R. 197.)[1]

Rodney Wayne Weidenbenner and Michele Ann Weidenbenner ("Debtors") filed for chapter 7 bankruptcy on March 7, 2014. (Wells Fargo Br. 7; A.R. 4, 111.) At the time of filing for bankruptcy, Debtors maintained four bank accounts with Wells Fargo (the "Accounts"). (A.R. 4.) Wells Fargo learned of the bankruptcy proceeding on March 12, 2014, at which time there was more than $5,000 in the combined balances of the Accounts. (Wells Fargo Br. 7.) Pursuant to its Policy, Wells Fargo immediately placed the Accounts on "bankruptcy status," which recognizes them as property of the bankruptcy estate under the control of the bankruptcy trustee (the "Trustee"), and "results in an 'administrative pledge' to the accounts that permits the payment of these Estate Balances only upon the Trustee's direction." (*Id.*) The same day, Wells Fargo wrote to Debtors' counsel and to the Trustee informing them of this action. (*Id.* at 8.)

---

[1] Citations to "A.R." are citations to the record on appeal, filed as an appendix to Wells Fargo's opening brief.

On March 13, 2014, a scheduled payment to Kohl's Stores ("Kohl's") in the amount of $75.00 was "presented to Wells Fargo"; however, because of the administrative pledge, the checking account on which the payment was drawn had insufficient funds to cover that amount, and Wells Fargo declined the transaction. (*Id.* at 8–9.) As a result, Debtors incurred a $25.00 fee. (A.R. 6, 31.) On March 17, 2014, Wells Fargo received a letter from the Trustee instructing it to release the entire amount in the Accounts to Debtors, and Wells Fargo complied the same day. (Wells Fargo Br. 8.)

On April 23, 2014, Debtors moved for an order from the Bankruptcy Court holding Wells Fargo in violation of the automatic stay pursuant to 11 U.S.C. § 362(a) and awarding damages, attorneys' fees, costs, and disbursement to the debtor pursuant to 11 U.S.C. § 362(k) (the "Motion"). (A.R. 1; Wells Fargo Br. 4.) In their Motion, Debtors argued that Wells Fargo's application of the administrative pledge improperly seized funds that were claimed as exempt assets under 11 U.S.C. § 522. (Wells Fargo Br. 4.) On July 22, 2014, the Bankruptcy Court held a hearing on the Motion, and subsequently held an evidentiary hearing on October 6, 2014. (*Id.*)

On December 12, 2014, the Bankruptcy Court determined that Wells Fargo's conduct violated the automatic stay by exercising control over property of the estate, and that Debtors had standing to prosecute an action for damages under § 362(k). (*Id.* at 5; A.R. 208.) On December 30, 2014, the Bankruptcy Court issued the Orders finding Wells Fargo in violation of the stay and awarding damages of $25.00, attorneys' fees of $14,839.50, and costs of $13.68. (Wells Fargo Br. 5; *see also* Not. of Appeal Exhs. A & B ("Orders").) On January 12, 2015, Wells Fargo filed its notice of appeal and moved for a stay pending appeal, which the Bankruptcy Court granted on February 23, 2015. (Wells Fargo Br. 5.)

Wells Fargo filed its opening brief on May 2, 2015. (*See* Wells Fargo Br.) On April 15, 2015, Debtors' counsel filed a letter indicating that he was not representing the Debtors in the pending appeal, and that Debtors "are unable to afford . . . other counsel to oppose" the appeal. (*See* Dkt. No. 9.) On May 18, 2015, Wells Fargo filed a letter requesting that the Court deem the appeal fully submitted after Debtors failed to file an opposition. (Dkt. No. 14.) The Court directed Debtors to respond to the letter. (Dkt. No. 16.) Debtors never filed a response.

On May 26, 2015, the National Association of Consumer Bankruptcy Attorneys ("NACBA") filed a Motion for Leave to File an amicus brief in support of Debtors. (Dkt. No. 17.) Wells Fargo filed an opposition to the Motion on May 27, 2015. (Dkt. No. 19.) The Court granted the Motion on May 27, 2015. (Dkt. No. 21.) NACBA filed its amicus brief on June 15, 2015, (Br. for Appellee Amicus Curiae ("NACBA Br.") (Dkt. No. 25)), and Wells Fargo filed a reply on July 6, 2015, (Reply Br. for Appellant ("Wells Fargo Reply") (Dkt. No. 26)).

## II. Discussion

### A. Standard of Review

The Court has jurisdiction to review this appeal pursuant to 28 U.S.C. § 158(a)(1). *See Dishi & Sons v. Bay Condos LLC*, 510 B.R. 696, 700 (S.D.N.Y. 2014). A district court reviews a bankruptcy court's conclusions of law de novo, its discretionary decisions for abuse of discretion, and its findings of fact for clear error. *See In re Bayshore Wire Prods. Corp.*, 209 F.3d 100, 103 (2d Cir. 2000). Whether a party violated an automatic stay is a matter of law and is reviewed de novo. *See In re Adomah*, 368 B.R. 134, 137 (S.D.N.Y. 2007).

B.  Analysis

    1.  Applicable Law

        a.  Section 362(a)

"Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition 'operates as a stay, applicable to all entities, of' most actions against the debtor, the debtor's property, and property of the bankruptcy estate." *In re Weil*, No. 12-CV-462, 2013 WL 1798898, at *2 (D. Conn. Apr. 29, 2013) (quoting 11 U.S.C. § 362(a)).  This "automatic stay" provision "is one of the fundamental debtor protections provided by the bankruptcy laws, designed to relieve the financial pressures that drove [the] debtors into bankruptcy" by "afford[ing] [the] debtors a breathing spell from the collection process and enabl[ing] them to attempt a repayment or reorganization plan to satisfy existing debt." *E. Refractories Co. v. Forty Eight Insulations Inc.*, 157 F.3d 169, 172 (2d Cir. 1998) (citations, alteration, and quotation marks omitted).  The provision prohibits, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).

An "individual injured by any willful violation of" the automatic stay provision "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."  *Id.* § 362(k)(1).  A "willful" violation is "any deliberate act taken in violation of a stay, which the violator knows to be in existence." *In re Crysen/Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir. 1990).  "In other words, specific intent to violate the stay is not required; instead, general intent in taking actions which have the effect of violating the automatic stay is sufficient to warrant damages." *In re Sturman*, No. 10-CV-6725, 2011 WL 4472412, at *2 (S.D.N.Y. Sept. 27, 2011) (citation and quotation marks omitted).

b. Section 542(b)

Section 542(b) of the Bankruptcy Code provides that "an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under [§] 553 of this title against a claim against the debtor."  11 U.S.C. § 542(b).  Deposits held in bank accounts have been interpreted as a debt owed by the bank to the depositor for purposes of § 542(b).  *See Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 19 (1995) (characterizing funds in a debtor's bank account as a debt owed by the bank to the debtor); *In re Pyatt*, 486 F.3d 423, 430 (8th Cir. 2007) (same); *In re Turner Grain Merch., Inc.*, 557 B.R. 147, 150 (Bankr. E.D. Ark. 2016) ("A bank account is a debt owed by a bank to the depositor that is payable on demand or on order." (citing *Strumpf*, 516 U.S. at 19)).

c. Section 522(b)

Under 11 U.S.C. § 522, "an individual debtor may exempt property of the estate."  11 U.S.C. § 522(b)(1); *see also In re Bell*, 225 F.3d 203, 208 (2d Cir. 2000) ("When an individual debtor petitions for bankruptcy he is entitled to claim certain property as exempt from the estate.").  "The debtor must file a list of the property claimed as exempt; unless a party in interest objects, the property claimed as exempt on the list is exempt."  *In re Magee*, 444 B.R. 254, 258 (Bankr. S.D.N.Y. 2011) (citing 11 U.S.C. § 522(l)).  "Any creditor and the bankruptcy trustee may file objections to the debtor's list of property claimed as exempt."  *Bell*, 225 F.3d at 209 (citing Fed. R. Bankr. P. 4003(b)).  "Bankruptcy Rule 4003(b) provides that the thirty-day period within which to object to a claim of exemption begins to run after the conclusion of the 341(a) meeting [of creditors]."  *In re DeArakie*, 199 B.R. 821, 826 (Bankr. S.D.N.Y. 1996) (alteration and citation omitted); *see also Bace v. Babitt*, No. 07-CV-2421, 2008 WL 800672, at

6

*2 (S.D.N.Y. Mar. 25, 2008) ("A party in interest may file an objection to the list of property claimed as exempt only within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later." (citing Fed. R. Bankr. P. 4003(b))).

### 2. Application

The Bankruptcy Court concluded that "Wells Fargo clearly exercised control over property of the estate in violation of the automatic stay," because "Wells Fargo, by itself, made the determination to only place a freeze on accounts of $5,000 or more," even though this "was not mandated by the Bankruptcy Code, ordered by the Court, or requested by the chapter 7 trustee." (A.R. 200.) The Bankruptcy Court rejected Wells Fargo's argument that 11 U.S.C. § 542(b), which provides that "an entity that owes a debt that is property of the estate . . . shall pay such debt to, or on the order of, the trustee," mandated its actions; specifically, the Bankruptcy Court found that because Wells Fargo distinguishes between assets above and below $5,000, the Policy does not itself comply with § 542(b) with respect to all accounts, even assuming that the administrative pledge constituted compliance with § 542's mandate. (*Id.* at 200–01 ("Under the Bankruptcy Code, all property, no matter how miniscule it may be, is property of the estate. Thus, under its own logic, Wells Fargo violates § 542(b) every time it fails to place an administrative freeze on [an] account with a balance below $5,000.").) The Bankruptcy Court also found that because the Administrative Pledge led to a $25 penalty charge by Kohl's, Debtors had demonstrated an injury and thus had standing and were entitled to actual damages, as well as legal fees and costs. (*See* A.R. 204–07.)

An entity's obligation to turn over property of the estate to the trustee under § 542(b) is in tension with §362(a)(3)'s prohibition on exercising control over property of the estate; the

7

process of turning over property to the trustee arguably requires the exercise of control, if only temporarily. *See In re Flynn*, 143 B.R. 798, 801 (Bankr. D.R.I. 1992) (recognizing "the inconsistency in the application" of §542(b) and §362(a)). In *Strumpf*, the Supreme Court addressed this tension directly. There, the debtor held a checking account with, and was in default on a loan from, the petitioner bank. Upon learning of the debtor's bankruptcy filing, the bank placed an "administrative hold" on so much of the debtor's checking account as it claimed was subject to "setoff"—"that is, the bank refused to pay withdrawals from the account that would reduce the balance below the sum that it claimed was due on [the debtor's] loan." *Strumpf*, 516 U.S. at 17–18. The bankruptcy court ruled that the administrative hold constituted a setoff in violation of the automatic stay of such setoffs under 11 U.S.C. § 362(a)(7) and sanctioned the bank. *See id*. at 18. The district court reversed the judgment, but the Fourth Circuit reversed again, agreeing with the bankruptcy court that an administrative hold "is tantamount to the exercise of a right of setoff and thus violates the automatic stay." *Id*.

The Supreme Court reversed the Fourth Circuit, holding that the administrative hold was "not a setoff within the meaning of § 362(a)(7)," which requires "an intent permanently to settle accounts," rather than a temporary freeze. *Id.* at 19. The *Strumpf* Court explained that § 524(b), "which concerns turnover of property to the estate," allows an exception for setoff rights, and that "[i]t would be an odd construction of § 362(a)(7) that required a creditor with a right of setoff to do immediately that which § 542(b) specifically excuses it from doing." *Id.* at 20. The *Strumpf* Court then specifically rejected the argument that the bank's actions nonetheless violated § 362(a)(3)'s bar on exercising control over property of the estate, finding that the debtor's "reliance on [this] provision[] rests on the false premise that [the bank's] administrative hold took something from [the debtor], or exercised dominion over property that belonged to [the

8

debtor]." *Id.* at 21. The Supreme Court reasoned that a bank account is "nothing more or less than a promise to pay, from the bank to the depositor, and [the bank's] refusal to pay was neither a taking of possession of [the debtor's] property nor an exercising of control over it, but merely a refusal to perform its promise." *Id.* (citing *Bank of Marin v. England*, 385 U.S. 99, 101 (1966)). Finally, the *Strumpf* Court concluded that it would not interpret § 362(a)(3) in a way "that would proscribe what § 542(b)'s exception and § 553(a)'s general rule were plainly intended to permit: the temporary refusal of a creditor to pay a debt that is subject to setoff against a debt owed by the bankrupt." *Id.* (alteration and quotation marks omitted).

Subsequent courts applying *Strumpf* have applied its reasoning to temporary holds placed on bank accounts even where the bank held no setoff rights, including the specific administrative pledge at issue here. In *Wells Fargo Bank, N.A. v. Jimenez*, 406 B.R. 935 (D.N.M. 2008), which involved the same Policy at issue in this Action, the district court found that "*Strumpf* lends . . . support for the conclusion that [the Administrative Pledge Policy] did not run afoul of [§] 362(a)(3)," *id*. at 947, explaining that although the *Strumpf* Court "was concerned with the exception of [§] 542(b), the reasoning applies equally." *Id.* at 948 ("Guided by the reasoning of *Strumpf*, this [c]ourt declines to give [§] 362(a)(3) an interpretation that would place it in conflict with [§] 542(b)."). Similarly, in *In re Calvin*, 329 B.R. 589 (S.D. Tex. 2005), the court rejected the argument that *Strumpf*'s reasoning was limited to creditors with setoff rights in holding that Wells Fargo's Policy does not violate § 362(a)(3). *Id.* at 603 ("The Supreme Court has held that an administrative freeze on an account, which is a promise to pay, does not violate 362(a)(3) because the freeze constitutes neither a taking of property from the debtor nor an exercise of dominion over the debtor's property." (citing *Strumpf*, 516 U.S. at 21)); *see also In re Randolph Towers Coop., Inc.*, 458 B.R. 1, 3–4 (Bankr. D.D.C. 2011) ("There simply is no logical way to

9

treat the rationale of *Strumpf* as limited to temporary restraints on the utilization of a bank account, or as limited to protection of the right of setoff."); *In re Williams*, 249 B.R. 222, 223 (Bankr. D.D.C. 2000) ("[F]ailure to make turnover under 11 U.S.C. § 542(b) is not a violation of the automatic stay of 11 U.S.C. § 362(a)." (relying on *Strumpf*, 516 U.S. at 21)). Generally, in "attempt[ing] to delineate the reach of *Strumpf*'s holding beyond its specific set of facts," "courts have emphasized the importance of the temporary nature of the administrative freeze and the need to seek immediate relief or direction," and have "distinguished between an act to control and an act to maintain the status quo." *In re Phillips*, 443 B.R. 63, 66 (Bankr. M.D.N.C. 2010) (collecting cases); *accord In re Jernigan*, 475 B.R. 535, 539 (Bankr. W.D. Va. 2012) ("[T]he key in determining if an administrative hold violates the automatic stay turns upon whether the hold is temporary and serves to maintain the status quo and preserve property of the estate." (citation and quotation marks omitted)).

In *In re Mwangi*, 764 F.3d 1168 (9th Cir. 2014), the Ninth Circuit upheld Wells Fargo's use of the Policy on the rationale that because a bank account is a debt owed to the debtor, and thus becomes property of the estate upon filing of the bankruptcy petition, a debtor cannot be injured by a bank's refusal to distribute funds to the debtor, because debtors have no right to control or use property of the estate absent approval of the trustee. *See Mwangi*, 764 F.3d at 1177. There, Wells Fargo discovered that the debtors had filed a chapter 7 bankruptcy petition, and placed the same "temporary administrative pledge" on the debtors' bank accounts as in this case. *Id.* at 1170. The debtors filed a motion for sanctions for violation of the automatic stay, which the bankruptcy court denied. *Id.* at 1171–72. On appeal, the bankruptcy appellate panel ("BAP") reversed, holding that *Strumpf*'s authorization to impose a temporary administrative hold was limited to the need to preserve setoff rights; that the debtors had an "inchoate" interest

10

in the account funds, although they remained part of the bankruptcy estate despite a claimed exemption; that the debtors had standing to pursue sanctions for violation of the stay; and that Wells Fargo had violated the stay by exercising control over estate property. *Id.* at 1172. The BAP remanded to the bankruptcy court to determine whether Wells Fargo's hold on the accounts was reasonable and, if not, whether the debtors had suffered damages. *Id.*

On remand, the bankruptcy court again denied the debtors' motion for sanctions for violation of the automatic stay. *Id.* Rather than appeal, the debtors then filed an adversary class action against Wells Fargo alleging violations of § 362(a)(3), which was dismissed with prejudice on the basis that the debtors lacked standing because the trustee alone had standing to protect estate property. *Id.* To the extent the debtors had an inchoate interest in the account funds, the bankruptcy court found they could not allege any injury based on the administrative pledge because they had no right to possess estate property at the time. *Id.*

The debtors appealed the bankruptcy court's decision. The district court held that before the objections period for exempt property had run, the account funds remained in the bankruptcy estate, and that Wells Fargo could not violate the automatic stay during this period by refusing to distribute funds to the debtors, because the debtors had no right to possess or control the account funds at that time. *Id.* at 1173. With respect to the debtors' argument that the property had been claimed as exempt, the district court held that even after the objections period ran and the accounts became exempt property, Wells Fargo still could not violate the automatic stay because § 362(a)(3) applies only to estate property, and exempt property is no longer considered property of the estate. *Id.* Therefore, the court held that the debtors were not injured under § 362(a)(3) by the administrative pledge, and the bankruptcy court's dismissal was affirmed. *Id.*

On appeal, the Ninth Circuit affirmed the district court, holding that the debtors could not establish an injury while the accounts were estate property, because they had no right to possess or control the account funds, or after the accounts became exempt because they were no longer protected by the automatic stay. *Id.* at 1177.

The Court finds the Ninth Circuit's reasoning persuasive. Section 362(k)(1) requires that a debtor be "injured by any willful violation of a stay" in order to recover damages. Here, Debtors had no present right to possess or control any estate property at the time Wells Fargo denied the Kohl's charge. Like several other courts that have addressed this issue, the Court finds that Debtors thus were not injured by the Policy. *See Mwangi*, 764 F.3d at 1177; *In re Kessler*, No. 10-CV-18615, 2011 WL 1042617, at *2 (Bankr. S.D. Cal. Mar. 4, 2011) ("[A]lthough the [d]ebtors' inability to use the [e]state [f]unds caused them injury, this injury was not caused by Wells Fargo's administrative freeze. At that time, the [e]state [f]unds belonged to the bankruptcy estate."); *In re Bucchino*, 439 B.R. 761, 774 (Bankr. D.N.M. 2010) ("[T]he [c]ourt cannot find that a debtor has suffered an injury sufficient to confer standing as a result of being prevented access to funds on deposit in a bank account before the account is exempt when the debtor is not legally entitled to use the funds . . . ."), *aff'd*, No. 10-CV-1177, 2011 WL 13284466 (D.N.M. Sept. 14, 2011); *Jimenez*, 406 B.R. at 944 (holding a debtor lacked standing to pursue a stay violation claim based on a hold on her accounts pursuant to Wells Fargo's Administrative Pledge Policy, because she "was not entitled to access those funds once she filed for bankruptcy"); *Calvin*, 329 B.R. at 601–02 ("The [d]ebtors suffered no injury [based on Wells Fargo's Policy] because at the time [Wells Fargo] froze the funds, they did not belong to the [d]ebtors despite their claiming the funds as exempt."); *see also In re Sang Yul Lee*, No. 10-CV-1003, 2011 WL 5452830, at *1 (Bankr. D. Alaska Mar. 15, 2011) (collecting cases

12

finding that debtors lack standing to seek sanctions for implementation of the Wells Fargo Policy, and that the Policy does not violate the automatic stay).[2]

Moreover, because under the Policy Wells Fargo immediately seeks instruction from the bankruptcy trustee regarding payment of any funds held, Wells Fargo cannot be said to be exercising control over estate property, and thus does not violate § 362(a), by placing a temporary hold on a debtor's bank accounts. *See Jernigan*, 475 B.R. at 540 (holding the Policy did not violate the automatic stay because "[Wells Fargo]'s actions prove that it was trying to maintain the status quo and preserve property of the estate," and "[t]he duration of the administrative hold was reasonable and was temporary" (quotation marks omitted)); *Phillips*, 443 B.R. at 66 (finding that "Wells Fargo's administrative hold or the 'pledge' on the [d]ebtors' [b]ank [a]ccounts while it awaited directions from the [t]rustee complied with § 542 and did not violate the automatic stay"); *Bucchino*, 439 B.R. at 775 (holding the Policy did not violate the automatic stay because "Wells Fargo barred [the] [p]laintiffs access to the [b]ank [a]ccounts, but its action in placing the [a]ccounts in 'bankruptcy status' did not deny access to the Chapter 7 Trustee"); *Calvin*, 329 B.R. at 603 (holding the Policy does not violate the automatic stay because Wells Fargo merely "froze the account while awaiting a decision from the [t]rustee as to the disposition of the funds"). "It is recognized that banks can place temporary administrative

---

[2] Additionally, at least one court in this district has ruled that the Policy does not violate the automatic stay because it results in no injury. In *In re Vargas*, Ch. 7 Case No. 10-23608 (S.D.N.Y.), the bankruptcy court denied a motion seeking sanctions for violation of the automatic stay based on the Policy, "having found that the [d]ebtors were not injured by Wells Fargo's conduct." *In re Vargas*, Ch. 7 Case No. 10-23608, ECF No. 24 (Order) (S.D.N.Y. Oct. 26, 2010). At oral argument on the motion, the court explained, "here, the [t]rustee isn't asserting an injury and the money wasn't available for [the debtors], so I don't see how they were injured except in a completely hypothetical and speculative way. . . . I just don't see an injury and I think you need an individual injured more than just hypothetically . . . under 362(k)." *In re Vargas*, Ch. 7 Case No. 10-23608, ECF No. 23 (Transcript), at 7–9 (S.D.N.Y. Oct. 14, 2010).

13

holds on property to protect themselves against liability or loss." *In re Adomah*, 340 B.R. 453, 458 (Bankr. S.D.N.Y. 2006) (citing *Strumpf*, 516 U.S. at 21), *aff'd*, 368 B.R. 134 (S.D.N.Y. 2007); *see also Randolph Towers Coop.*, 458 B.R. at 3 ("[Section] 362(a)(3) is not violated whether a bank's refusal to honor checks drawn on an account is characterized as temporary or permanent, and whether the refusal is done to protect the bank's asserted right of setoff or for some other reason."); *In re Laux*, 181 B.R. 60, 63 (Bankr. S.D. Ill. 1995) ("A temporary freeze that maintains the status quo pending judicial action is . . . consistent with and countenanced by § 542(b), and does not constitute a violation of the automatic stay."); *cf. Town of Hempstead Employees Fed. Credit Union v. Wicks*, 215 B.R. 316, 320 (E.D.N.Y. 1997) (noting that *Strumpf* "may cast doubt on the validity of" the bankruptcy court's conclusion that a credit union's administrative hold on the debtor's savings accounts violated § 362(a)(3)). Because Wells Fargo's "hold on [Debtors' Accounts] pending instructions from the Trustee was neither a taking of possession nor an exercise of control over property of the . . . bankruptcy estate," but "merely a refusal to perform its promise to pay [Debtors] who had absolutely no authority to direct disposition of estate property," Wells Fargo did not violate the automatic stay. *In re Young*, 439 B.R. 211, 217 (Bankr. M.D. Fla. 2010); *see also Williams*, 249 B.R. at 223 ("A bank's 'refusal to pay [is] neither a taking of possession of [the debtor's] property nor an exercising of control over it, but merely a refusal to perform its promise.'" (quoting *Strumpf*, 516 U.S. at 21)); *In re Mwangi*, 473 B.R. 802, 812 (D. Nev. 2012) ("A bank does not exercise control over property of the estate within the meaning of § 362(a)(3) when it refuses or fails to perform on its contractual obligation to pay the owner of the account." (citing *Strumpf*, 516 U.S. at 21)), *aff'd*, 764 F.3d 1168 (9th Cir. 2014).

Notably, in this case Wells Fargo did not deny a request from Debtors to withdraw funds; rather, Wells Fargo refused to honor a demand on estate property by a third party, Kohl's. Had Wells Fargo honored that demand, it would have run afoul of the clear text of § 542(b), which instructs entities owing a debt to the estate to turnover estate property only to, or on the order of, the Trustee. *See Randolph Towers Coop.*, 458 B.R. at 4 (finding that "a bank can refuse to pay checks drawn on the account for even an arbitrary reason . . . and that would not constitute a violation of the automatic stay"); *Williams*, 249 B.R. at 223 (explaining that § 542(b) "simply makes clear that [the bank holding the debtor's account] is obligated to render performance to the trustee," and noting that in a chapter 7 case "any turnover [under § 542(b)] would be sent to the trustee, not to the debtor").

Finally, the fact that Debtors claimed the Accounts as exempt under § 522(b) does not change the analysis. First, because the 30-day objection period had not yet run at the time of Wells Fargo's actions, the Accounts were not yet exempt property, but rather were property of the estate. *Mwangi*, 764 F.3d at 1176 ("Because the property is only 'claimed as exempt' during this 30–day objection period, it may be inferred that the property is not deemed exempt, and therefore the property does not revest in the debtor, until the end of the objection period."); *Phillips*, 443 B.R. at 66 (holding that because "the time period for the [t]rustee to object to [a claimed] exemption had not expired," the debtor's bank accounts "were at all times payable on order to the [t]rustee in compliance with § 542(b)"); *In re Zavala*, 444 B.R. 181, 189 (Bankr. E.D. Cal. 2011) ("Claiming an exemption in the [bank] accounts does not remove them from th[e] bankruptcy estate."); *Calvin*, 329 B.R. at 602 ("[N]ot until the period of time has passed for objecting to a debtor's proposed exemptions does the property become exempt and, once again, subject to the debtor's control." (citation omitted)). After the 30-day objection period expired

and Debtors' "bank account rights . . . bec[a]me exempt property," Debtors could have "pursue[d] enforcement of [Wells Fargo's] contractual obligation," *Williams*, 249 B.R. at 223, but the Accounts would no longer be protected by the automatic stay, *see Mwangi*, 764 F.3d at 1177 n.5 ("As long as the account funds remained estate property, the Debtors could file a motion to compel the trustee to abandon them. And as soon as the account funds revested, the Debtors could sue Wells Fargo for breach of contract based on Wells Fargo's failure to perform its promise to pay.").

The Bankruptcy Court concluded that Wells Fargo "necessarily exercised control over property of the estate" by placing a hold on the Accounts "until a demand was made for payment that it alone deemed appropriate." (A.R. 199–200.) However, by placing a brief hold and seeking direction from the Trustee, Wells Fargo "did not withhold estate property from the estate. On the contrary, Wells Fargo confirmed that the account funds were estate property and asked the [T]rustee for . . . instructions regarding their disbursement." *Mwangi*, 764 F.3d at 1178; *see also Jimenez*, 406 B.R. at 946 (holding the Policy did not violate the automatic stay because "[a]lthough the accounts were unavailable to the [d]ebtor (and presumably unavailable to any one else that may have attempted to access them, such as creditors or holders of checks written on the checking account), they were not unavailable to the [t]rustee."). Although the Bankruptcy Court suggested that Wells Fargo should have either immediately turned over Debtors' funds to the Trustee, placed the funds in a bank account in the Trustee's name, or filed a motion for relief from stay, (*see* A.R. 200), § 542(b) nowhere requires that turnover to a trustee occur immediately upon learning of a stay, *see* 11 U.S.C. § 542(b) ("[A]n entity that owes a debt that is property of the estate . . . shall pay such debt to, *or on the order of*, the trustee." (emphasis added)); *see also Phillips*, 443 B.R. at 66 (holding the Policy did not violate § 362(a)(3) because

the account funds "were at all times payable on order to the [t]rustee in compliance with § 542(b), which unambiguously provides that 'an entity that owes a debt that is property of the estate . . . shall pay such debt to, or on the order of, the trustee'").

The Bankruptcy Court also determined that the plain language of the Bankruptcy Code leads to the conclusion that Wells Fargo violated the automatic stay because turnover under § 542(b) is not an enumerated exception to the automatic stay, and because § 542(b) creates an express exception for setoff rights that would typically violate § 362(a)(7), but not for violation of § 362(a)(3). (*See* A.R. 202–03.) However, § 362(a) also specifically delineates between property of the debtor and property of the estate; although § 362(a)(3) protects "property of the estate," § 362(a)(5) and (6) stay actions "against property of the debtor," while § 362(a)(2) stays actions against either "the debtor or against property of the estate." *See Zavala*, 444 B.R. at 190 ("When Congress enacted the 11 U.S.C. § 362(a) automatic stay provisions, it created two specific areas for the stay—one for the estate and one for the debtor."). Like § 362(a), § 542(b) refers only to "property of the estate" and indicates that it shall be turned over only to the Trustee. Furthermore, § 542(c) expressly protects an entity that does *not* have actual notice or knowledge of the bankruptcy filing in the event that entity pays a debt owing to a debtor "to an entity other than the trustee"; it necessarily follows that an entity *with* actual knowledge of the bankruptcy filing, as is the case with Wells Fargo in this Action, may *not* pay the debt it owes a debtor to anyone other than the Trustee. *See Phillips*, 443 B.R. at 66 (noting that "if Wells Fargo did release the funds directly to the [d]ebtors, it could have been liable under § 542 for any decrease in estate funds" (citation omitted)).

With respect to injury, the Bankruptcy Court found that the $25 fee charged by Kohl's as a result of Wells Fargo's Policy constituted an injury that differentiated this case from others

where courts held the Policy did not result in an injury. (A.R. 205.)[3] The Bankruptcy Court also disagreed with other courts which found the Policy does not injure the debtor because the frozen funds are part of the estate, concluding that a debtor's obligation under § 521(a)(4) to surrender all property to a bankruptcy trustee "is less profound than the duty placed on Wells Fargo under § 542" to turnover estate property. (A.R. 206.) However, even assuming that Wells Fargo's duty was indeed weightier and that it was not entitled to withhold property from the estate to protect itself, it did not in fact withhold property from the estate or from the Trustee, the only entity entitled to direct disbursement of estate assets, but from Debtors. *See Jimenez*, 406 B.R. at 946 ("Although the accounts were unavailable to the [d]ebtor (and presumably unavailable to any one else that may have attempted to access them, such as creditors or holders of checks written on the checking account), they were not unavailable to the [t]rustee."). The Court agrees with the overwhelming majority of courts assessing Wells Fargo's Policy that have held debtors are not injured by it because they have no right to possess or control property of the estate after filing for bankruptcy. *See, e.g.*, *Mwangi*, 764 F.3d at 1177; *Kessler*, 2011 WL 1042617, at *2; *Bucchino*, 439 B.R. at 774; *Jimenez*, 406 B.R. at 944; *Calvin*, 329 B.R. at 601–02.

The Bankruptcy Court also held, and NACBA argues here, that policy considerations warrant a finding that Wells Fargo violated the automatic stay. The Bankruptcy Court noted that after filing for bankruptcy, "debtors continue to eat, drive to work, and take care of children; they

---

[3] The Bankruptcy Court specifically distinguished *In re Calvin* on this basis, noting that there, the court found no injury because the debtors "had already been refunded actual damages of $75.00 in returned check fees." (A.R. 205 (citing *Calvin*, 329 B.R. at 603).) However, the court in *Calvin* in fact held that there was no injury, and therefore no standing, "because at the time [Wells Fargo] froze the funds, they did not belong to the [debtors]," but rather to the estate. *Calvin*, 329 B.R. at 602. The court went on to say that even if the debtors had standing and the stay had been violated, they could not demonstrate actual damages because the $75 had been refunded. *See id.* at 603–04.

18

may not receive a post-petition paycheck for days or weeks." (A.R. 203–04.) The Bankruptcy Court also noted that the Policy "makes it more likely that debtors will squirrel away secret stashes of cash prior to filing so that they can continue to meet their everyday needs," and that it is more efficient if they are "encouraged to use bank accounts post-petition" so that "a more accurate record of a debtor's financial situation will be available in the form of bank statements." (A.R. 204.) NACBA similarly argues that "debtors such as those in this case[] must be able to purchase food, household goods, and other necessities even though the exemption process may not be final," and that "Wells Fargo is not charged by the Bankruptcy Code or the court with performing the role of the trustee." (NACBA Br. 13.) However, it is precisely because Wells Fargo is not charged with performing the role of the trustee that it declined to fulfill the charge from Kohl's at issue in this case, and instead sought instruction from the Trustee.

The Bankruptcy Code specifically includes the exemption process under 11 U.S.C. § 522 "[t]o facilitate the debtor's 'fresh start' and to protect the debtor's dependents." *Magee*, 444 B.R. at 258. Nevertheless, "the Federal Rules of Bankruptcy Procedure require interested parties to object to a debtor's claimed exemptions within 30 days." *Schwab v. Reilly*, 560 U.S. 770, 775 (2010) (citing Fed. R. Bankr. P. 4003(b)); *see also Bell*, 225 F.3d at 209 ("Any creditor and the bankruptcy trustee may file objections to the debtor's list of property claimed as exempt." (citation omitted)). It is well-settled that estate property does not become exempt until the expiration of that 30-day period. *See Mwangi*, 764 F.3d at 1176 ("Because the property is only 'claimed as exempt' during this 30-day objection period, it may be inferred that the property is not deemed exempt, and therefore the property does not revest in the debtor, until the end of the objection period."); *Phillips*, 443 B.R. at 66 (holding that because "the time period for the [t]rustee to object to [a claimed] exemption had not expired," the debtor's bank accounts "were

at all times payable on order to the [t]rustee in compliance with § 542(b)"); *Calvin*, 329 B.R. at 602 ("[N]ot until the period of time has passed for objecting to a debtor's proposed exemptions does the property become exempt and, once again, subject to the debtor's control." (citation omitted)). Thus, the law has already contemplated the precise concerns outlined by the Bankruptcy Court and NACBA, and provided a solution that balances the interests of all parties involved. It is not the role of this Court to carve out additional protections when Congress has already expressly included such a scheme in the Bankruptcy Code.

For these reasons, the Court reverses the Orders of the Bankruptcy Court finding Wells Fargo violated the automatic stay.

### III. Conclusion

For the foregoing reasons, the order of the Bankruptcy Court is reversed. The case is remanded to the Bankruptcy Court for further proceedings consistent with this Opinion.

SO ORDERED.

Dated: April 24, 2019
White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE